UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN WALDEN,

        Plaintiff,

   - against -

DISTRICT ATTORNEY CYRUS VANCE
JR, ASSISTANCE DISTRICT
ATTORNEY SHIPLA KALRA,
HON . ARLENE GOLDBERG,
HON. JILL KONVISER,
COMMISSIONER JAMES ONELL,
DETECTIVE STEVE STANLEY SHELD#
3554, DETECTIVE JAMES MEEHAN
SHELD#6445,
JUSTICE ELLEN GESMER,
DEPUTY CLERK MARGRET SOWAH,
ATTORNEY GENERAL LITITIA
JAMES, ASSISTANCE ATTORNEY
GENERAL CHARLES SANDERS,
ATTORNEY SUSAN CALVELLO,
ATTORNEY LAWRENCE SWARTZ,
ATTORNEY WILLIAM KENDALL,
COMMISSIONER ANTHONEY J.
ANNUCCI,
SUPRINTENDENT KERAN CROWLY,
CITY OF NEW YORK LAW
DEPARTMENT,
Official and Indivisual
Capacity & Official Capacity.

        Defendant's

RULE 15(a)
AMENDED & SUPPLEMENT

CIVIL RIGHTS COMPLAINT

[42 U.S.C. §§§1983 & 1985 & 1986 3]

YES(XX

~~1:7 cv-06862 AMD-ST~~

17-CV-9370 (Cm)

SIR/MADAM:

## STATEMENT OF CLAIM

NAME OF THE PLAINTIFF JOHN WALDEN: In violation of the plaintiff Rights of The
United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. The plai-
ntiff was never prosecuted in a Court of Law, without due process of the Law.
and wrongfully convicted. And Illegally Detained and Illegally Imprisoned
without a True Bill of Indictment, and without a Uniform Sentence & Commitment
of a felony Conviction ever being filed with the Court. The plaintiff was
maliciousley prosecuted with fabricated and manufactred evidence, and falsi-
fied information to Illegally Imprisoned the plaintiff. Without convicting the
plaintiff to two Illegal sentence of a three to six and six to twelve years of
Imprisonment. The plaintiff is being Illegally Imprisoned and subjected to
cruel and unusal punishment without due process of the Law. The State of New
york and City of New York and Municipality of New York County, Lack Subject
Matter Jurisdiction in violation of the plaintiff Constitutional Rights of The
United States Constitution.

## ADDRESS OF DEFENDANTS

1. District Attorney Office of New York City policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, 1 Hogan Place New York. N.Y. 10013.

2. The Supreme Court of New York County Hon. Arlene Goldberg, Hon. Jill Konviser, 100 Cetntre Street New York N.Y. 10013.

3. The State of New York Supreme Court Appellate Division First Department Justice Ellen Gesmer, Deputy Clerk Margret Sowah, 27 Madison Avenue New York N.Y. 10010.

4. The Attorney General Office of The State of New York policymaker Lititia James, Assistance District Attorney General Charles Sanders, The Capitol Albany N.Y. 12224.

5. The New York City Police Department policymaker Commissioner James Onell, Detective Steve Stanley Sheld#3554, Detective James Meehan Sheld#6445, 1 Police Plaza New York N.Y. 10013.

6. The City of New York Department of Law 100 Church Street New York N.Y. 10007.

7. Attorney William Kendall Neiborhood Defender Service of Harlem 317 Lenox Avenue N.Y. 10027.

8. Attorney Lawrence Swartz 56 Fifth Avenue New York N.Y. 10006.

9. Attorney Susan Calvello 30 wall Street New York N.Y. 10005.

10. policymaker Commissioner Anthony J. Annucci. 1220 Washington Blvd Albany N.Y. 12224.

11. Orleans Correctional Facility Suprintendent Keran Crowly 3531 Gaines Basin Road Albion N.Y. 14411.

# STATEMENT OF CLAIM U.S.C. § 1983

1. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality New York County, The District Attorney Office of New York County Policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra. The Defendants committed malicious prosecution and prosecutoral misconduct, and falsley arrested the plaintiff without probable cause and without probable cause to prosecute. In violation of the plaintiff right to fair trial with deliberate indeifference and did not provide adequat training for its subordinates, a practice that is persistent and widespred that it customs throuh which constructive notice upon policymaker. Assistance District Attorney Shipla Kalra intentionally created fabricated and manufactured evidence, with falsified evidence. To Illegally detaine and Illegally Imprisoned the plaintiff without a True Bill of Indictment ever being filed with any Court in the State of New York, and without ever being prosecuted, and without a uniform sentence & commitment of a felony conviction ever being filed with any Court in the State of New York. In violation of the plaintiff constitutional Rights of The United States Constitution, 4th, 5th, 6th, And 14th, Amendment. The plaintiff was deprived of a right to due process of Law and deprivied of equel protection of the Law, and deprived a right to gurantees to jury trial and deprived of his civil rights and deprived of a right to speedy trial, and deprived effective assistance of counsel with abuse of process and malice.

2. Exhibit (1), in violation of the plaintiff 4th, 5th, 6th, And 14th, Amendment. The District Attorney Office and ADA Shipla Kalra Intentionally created a fabricated manufactured Jurisdictionalyy Defective Indictment, dated october 30, 2015. charging the plaintiff with nine duplicious counts of Burglary in the third degree, under penal § 140.20. That was never Authorized by a Grand Jury and never certified or signed by a Grand Jury forman, and was never filed with the Court, and not have a element of a crime only saying that the plaintiff knowingly entered and remained in the building with intent to commit a crime. It failed to specifiy precise conduct which the plaintiff is charged with and it failed to contain a concise allegation, and it failed to protect the plaintiff against future prosecution. The plaintiff has been Illegally detained and Illegally Imprisoned for four years, and sentence to two Illegal sentences of a three to six years and a six to twelve years of Imprisonment, without a True Bill of Indictment and without uniform sentence & commitment of a felony conviction ever being filed with and Court. The State of New York Lacks Subject Matter Jurisdiction. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

# STATEMENT OF CLAIM U.S.C. § 1983

3. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The New York City Police Department policymaker James Onell Detective Steve Stanley Sheld#6445, Detective James Meehan Sheld#3554, The Defendants committed malicious prosecution and prosecutoral misconduct with malice and abuse of process, and false arrest without probable cause and without probable cause to prosecute. The plaintiff is being Illegally Detained and Illegally Imprisoned without being prosecuted, and without a True Bill of Indictment and a uniform sentence & commitment of a felony conviction ever being filed with a Court Failure to train its ADA and adequately train and supervise it officers. In violation of the plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. The plaintiff is being subjected to cruel and unusal punishment in violation of a right to fair trialand deprived of a right to speedy trial deprived of His civil rights and deprived of due process of the Law, deprived of protection of the Law and deprived of a right to gurantess to a jury trial.

4. Exhibit(1), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. D.A. Cyrus Vance JR, ADA Shipla Kalra Did not ever file a felony complaint screener sheet, to prosecute the plaintiff as a felony defendant. That is mandatory to go forward to prosecute the plaintiff the felony compalaint screener prosection sheet, that was dated for August 20, 2015. was never asigned to Court Room and was never signed by a Judge, the sheet was never signed by the arresting office steve Stanley Sheld#6445. The screener sheet has the eleven digit Bar Code# 2015NY03270. that should not be on the felony complaint screener prosection sheet, it should be on a criminal felony complaint signed and dated by a Police officer, of the New York City Police Depatment, or a witness of a crime. ADA Shipla Kalra created a fabricated manufactured defective felony complaint, with a falsified seven Bar Code# 2732078. On it that was never filed with the Court, then ADA Shipla Kalra created a fabri-manufactured Arraignment sheet with the felony complaint screener prosecution Bar code# 2015NY03270. To make it look like the plaintiff was being prosecuted when He was Never prosecuted at all, because D.A. Cyrus Vance JR, and ADA Shipla Kalra had created all fabricated manufactured falsified evidence to Illegally Detained and Illegally Imrisoned the plaintiff without a True Bill of Indictment, and witout Due process of the Law. Cause Action Monell V. Deprt Soc Servs 436 U.S. 658.

# STATEMENT OF CLAIM U.S.C. § 1983

5. Statement of Claim U.S.C. § 1983 against The City of New York and the Minicipality of New York County, The District Attorney Office of New York County, District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Defendants committed malicious prosecution and prosecutoral misconduct, and falsley arrested the plaintiff without probable cause and without probable cause to prosecute, in violation of the plaintiff right to fair trial and failure by policymaker to properly train or supervise their subordinates such that policymaker exericised deliberate indifference. And Illegally detained and Illegally Imprisoned the plaintiff without a True Bill of Indictment ever being filed with the Court, and Illegally Imprisoned the plaintiff without a uniform sentence & commitment of a felony conviction ever being filed with the Court. In violation of Rights of The United States Constitution, 4th, 5th, 6th, And 14th, Amendment. The plaintiff was deprived of his civil rights and deprived of due process of Law, and deprived of a right to due process of the Law and of equel protection of the Law, and He was deprived of his right to speedy trial and deprived of effective assistance of counsel, and He was deprived of his by the fruit of the poisonous tree Illegal search and seizure, with abuse of process and with malice.

6. Exhibit(2), In violation of the plaintiff 4th, 5th, 6th, And 14th, Amendment. The District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra. Created a fabricated manufactured Trial Bureau Thirty Data Sheet with falsified information, dated October 6, 2015. The data sheet was falsified with Brady Material and falsified Exculpator evidence, with falsified blood and falsified finger print evidence and falsified statements that were created by the New York City Police Department. The District Attorney Office also used falsified criminal History on the data sheet to prejudice the plaintiff with incorrect information, such as the plaintiff has 14 arrest and six convictions which is incorrect. The District Attorney Office also falsified brady material and Exculpatory evidence, see DNA print hit on 2 incidents, see D cuts himself and leaves blood on elevator door DNA comes back to deft, see falsified statements my blood shouldn't be at any of the burglaries, see Exhibit(1), This was all created by to fabricated manufactured defective felony complaints the data sheet was created by the District Attorney Office to create other Illegall documents, that were never filed with the Court. to be used to Illegally detained and Illegally Imprisoned the plaintiff, without a True Bill of Indictment and without a uniform sentence & commiment of a felony conviction ever being filed with the Court. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

(3)

# STATEMENT OF CLAIM U.S.C. § 1983

7. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Defendants commtted malicious prosecution and prosecutoral misconduct and falseley arrest without probable cause to prosecute, and abuse of process with malice. failure by policymaker to properly train of supervise their subordinates such that the polcymaker exericied indifference indifference, a practice so persistent and widespred that it constitutes a custom throuh whoch constructive not ice is imposed polcymaker. The plaintiff is being Illegally detained and Illegally Imprisoned without a True Bill of Indictment, and Illegally Imprisoned without a uniform sentence & commitment of a felony conviction ever being filed in the Court, and without ever being prosecuted, In violation of tthe plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. The plaintiff is subjected to cruel and unusal punishment and deprived of a right to fair trail and deprived of effective of counsel, and deprived of equal protection of the Law, and deprived of his civil rights and deprived of a right to speedy trial and deprived of a right to search and seizure an gurantes to jury trial.

8. Ehibit(1)(2), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. The District Attorney Office D.A. Cyrus Vance and Shipla Kalra created two fabricated manufatred felony complaints. The Defective complaints were never filed with the Court and never signed by the police or a witness, and did not have a mandatory 11; digit bar code on it #2015NY03270 to be filed with the Court, to prosecute the plaintiff as a felony offender. ADA Shipla Kalra created two fabricated manufactred felony complaints with falsied information, one without a fabricated falsinfied information and with a fabricated manufactred bar code #2732078.both felony complaints had fabricated falsified information on them with falsified statement by the New York C ity Police Depatmet. See Exhibit(1)(2) Incident 3 Latent print was recovred from the above paper mached the defendant, Incident 4, D cuts himself and leaves blood on the elevator door DNA comes back to deft, Incident 6 one american siver dollar coin was recovered from the defendant person after he was arrested, see Exhibit(1), Incident dated July 28, 2015. 402 west 13th Street 4th, floor ECT report which shows that Latent print was recoverd from above paper Mached defendant. The District Attorney Office fabracted Brady matrial and Exculpatory evidence without ever prosecuting the plaintiff and without due process of Law for litigation purposes to Illegal Imprisoned without a True Bill of Indictment. <u>Monell V. Deprt Soc Servs 436 U.S. 658.</u>

9. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Defendants commtted malicious prosecution and prosecutpral misconduct, and abuss of process with malice and without probable cause to arrest, and without probable cause to prosecute in violation of the plaintiff right to fair trial, and failure by policymaker to proerly train or supervise their subordinates such that the policymaker exericised deliberate indifference, and failure to train ADA and that official policy of the municipality caused the Constitutional Injury. The plaintiff is being Illegally detained and Illegally Imprisoned without aver being prosecuted, and without a True Bill of Indictment, and without a uniform sentence & commitment of a felony conviction being filed with the Court. In violation of the plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. The plaintiff is being subjected to cruel and unusal punishment and being deprived of due process of the Law, and deprived of a right to speedy Trial and deprived of effective assistance of counsel and deprived of protection of of Law, and gurantees to jury trial and deprived of His civil rights.

10. Exhibit(1), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. ADA Shipla Kalra of the District Attorney Office Intentionally fabricated and manufacterd a falsified Arraignment Sheet. That was on two diffrent dates September 9, 2015. and October 10, 2015. and was never filed with the Court, and was never filed on the felony complaint screener prosection data sheet, to go forward with a prosecution against the plaintiff. The Arraignment sheet was created with fabricated manufaterd brady material and fabricated exculpatory evidence, and falsified statements created by the New York City Police Department, with dupliclous counts of occureces, see 6,7,8, and nine duplicious Incidents charging the plaintiff as a discretinary persistent felony offeder, under penal Law § 140.20. AdA Shipla Kalra did not ever file the felony Complaint screener Sheet but did fabricate and falsifie, the Bar Code #2015NYO53270. on the Defective Arrainment Sheet ADA Kalra created a fabricated manufactred 8 count Arraignment Sheet, to Illegally Imprisoned the plaintif without a True Bill of Indictment, and without due process of the Law and without the plaintiff ever being prosecuted by the County of New York. Cause of Action Monell V. Deprt Soc Servs 436 U.S.658.

# STATEMENT OF CLAIM § 1983

11. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalara, The Defendants committed malisious prosecution and prosecutoral misconduct, and falsley arrested the plaintiff without probable cause and without probable cause to prosecute, and failure by policymaker to properly train or supervise their subordinates such that the policymaker exericised deliberate indiffrence, and any actions or decisions made by municipality officials with decision making Authority. And being Illegally detained and Illegally Imprisoned without a True Bill of Indictment ever being filed with any Court, in the State of New York, and being Illegally Imprisoned without a uniiform sentence & commitment of a felolony conviction ever being filed with a Court. In violation of the plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. the plaintiff was deprived of his civil rights and deprived of a right to due process of the Law, and deprived of a right to fair trial and deprived of a right to equel protection of the Law, and subjected to cruel and unusal pushment and deprived of a right to speedy trial and effective assistance of counsel, and deprived of a right to gurantees to a jury trial, The State of New York and The County of New York Lacks Subject Matter Jurisdiction.

12. Exhibit(2), In violation of the plaintiff 4th, 5th, 6th, And 14th, Amendment. The Grand Jury Minutes are defective the District Attorney Office and ADA Shipla Kalra, conducted four UnAuthorized Grand Jury without being filed with the Court, or being filed on the data felony complaint screener sheet in order to start a felony conviction prosecution. The four UnAutorized Grand Jury proceedings took place on the dates of 8/25/15, 8/26/15, 9/8/15, 9/10/15, The D.A. Cyrus Vance JR, ADA Shipla Kalra, Intentionallyy created and Re-fabricated and Re-Manufactured all four Grand Jury proceeding's to create a 70 page defective set of Grand Jury Munites with pages picked apart and put together to look as one Grand Jury proceeding. The defective Grand Jury Minutes were never certified or signed by a Grand Jury forman and was never Authorized or filed with the Court, and did not ever produce a True Bill of Indictment to the Court. It was used for litigation purposes to Illegally detained and Illegally Imprisoned the plaintiff without ever being prosecuted, and to Illegally Imprisoned the plaitiff without due process of Law, and without a True Bill of Indictment and Lack of Subject Matter Jurisdiction.

Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

**EXHIBIT(2) GRAND JURY MINUTES**

13. Assistance District Attorney Shipla Kalra Leading the witness pages 10,11, Lines 20,21,22,23,24,1,2, Q, And just describe what the male was wearing i know the Grand Jury saw it on the record. A, Looks likes he was wearing a white shirt with a black backpack that he had on. Q, looked like a white chef coat is that right? A. Yeah.

14. Detective Meehan page 38, Lines 1,2,3,4,5,6,7,8,9, Q, did you execute a search warrant at 515 145th street, room 3210? A, yes. Q, and was that search warrant duly signed by a judge? A, yes. Q, and is that the same room wear the defendant was staying and apprehended? A, NO.

15. Detective Meehan page 36, Lines 3,4,5,6,7,8,9,10,11,12,13,14,15,16,17,18, 19, Q, And as a result of that investigation, did you make an arrest? A, Yes. Q, And who did you arrest? John Walden. Q, just to be clear, I--have you ever had any prior contact with the defendant, John Walden? A, Yes. Q, And how many hours of contact would you say that included? A, Three. Q, Three hours? A, yeah. Q, And during the course of this arrest. how many hours of contact did you have with the defendant? A, about three also.

16. Detective Vega page 71, Lines 13,14,15,16,17,18,19,20,21,22,23,24,25, Q, when you say defendant you mean a male, corret, A, Yeah. Q, can describe what he looks like? A, He a male black wearing a white shirt, Q, can you describe it is it a chef jacket, a button-down? A, a chef jacket. Q, can you recall what coler paints he was wearing? Cause of Action Monell V Deprt Soc Servs 436 U.S. 658.

17. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, The District Attorney Office of New York County, District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Defendants malicious prosecution and prosecutoral misconduct, and abuse of process with malice, and arrested the plaintiff without probable cause and without probable cause to prosecute, In violation of the plaintiff right to fair trial with deliberate indifference and did not prived adequat training for its subordinates, a practice that is persistent and widespred that it customs throuh which constructive notice upon policymaker. And being Illegally detained and Illegally Imprisoned without a True Bill of Indictment ever being filed in any Court in the State of New York, and being Illegally Imprisoned without a uniform sentence & commiment of a felony conviction ever being with a Court in the State of New York. In volation of the plaintiff Rights of The United States Constitution 4th, 5th, 6th, And 14th, Amendment. The plaintif was deprived of a right to due process of the Law and deprived of a right to equel protection of the Law, and deprived of his civil rights and deprived of a right to effective assistance of counsel and deprived of a right to speedy trial, and deprived of a right to gurantees of a jury trial and dep- of a right to serch and seizure.

18. Exhibit(3), In violation of the plaintiff 4th, 5th, 6th, And 14th, Amend- ment The District Attorney D.A. Cyrus Vance JR, ADA Shpla Kalra. Intentionally created a fabricated manufactured voiluntary disclosure Dated October 5, 2015. on the same day that the fabricated manufacuterd falsied statement conviction sheet was dated for. The voluntary disclosure form has nine falsified duplic- ious ocorrences of times and dates, which all say the same times and dates, that was created by the District Attorney Office and ADA Shipla Kalra. The voluntary sheet also has fabricated and manufactred falsified statement that were created by Detective Steve Stanley sheld#6445, and Detective James Meehan sheld#3554, on page 3, the defective voluntary diclosure sheet proves is that there was no Grand Jury testimony and there was no Brady Material and no scientific and medical reprots or identification. The defective voluntary dis closure sheet was signed and dated by ADA Shipla Kalra, but was never certi- fied or filed the Court. The voluntary disclosure was used for litigation pur- poses to Illegally detained and Illegally Imprisoned, without ever proseuting the plaintiff and without a True Bill of Indictment, and without due process of the Law. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

19. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra. The New York Police Department policymaker commissioner James Onell Detective James Meehan Sheld#3554, Detective Steve Stanley Sheld# 6445, The Defendants committed malicious procecution and prosecutoral misconduct, and falsley arrested the plaintiff without probeble cause and without probable cause to prosecute and Illegal search and seizure, and abuse of process with malice and cruel and unusal punihment with malice. In violation of the plaintiff right to fair trial with deliberate indeifffrence and did not provide adequate training for its officer who are employed by the City of New York, and failure to train if ADA. The plaintiff is being Illegally detained and Illegally Imprisoned without a True Bill of INdictment ever being filed with the Court, and being Illegally Imprisoned without a uniform sentence & commitment of a felony conviction ever being filed with Court. In violation of the plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. Deprived of a right to due process of the Law deprived of right to protection of the Law deprived of his civil rights and due proces of the Law, and deprived of speedy trial effective assistance of counsel.

20. Exhibit(3), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. Dated September 30, 2015. Janurary 26, 2016. The District Attorney Office and District Attorney Cyrus Vance JR, ADA Shipla Kalra deteted falsified brady and Exculpatory evidence, and falsified statements. From Exhibits(1)(2), Two defective fabricated felony complaints that came from ADA Shipla Kalra and Detective Meehan and Detective Stanley. To create fabricated manufactured office medical examiner labortory report dated September 30, 2015 and a fabricated manufactred affirmation of support in order of seizure dated Janurary 26, 2016. that was used to swab the plaintiff mouth for saliva. That were never signed or certified or filed with the Court, while the plaintiff was never arrested and without a True Bill of Indictment, and without the Defendants ever being able to prosecute the plaintiff. The District Attorney Office and ADA Shipla Kalra and Detective Meehan and Detective Stanley Intentionally created and fabricated manufactured without probable cause, to arrest and without probable cause to prosecute the plaintiff. Without due process of Law and then used this falsified information for lititgation purposes to Illegally Imprisoned the plaintiff without ever prosecuting him without a True Bill of Indictment. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

# STATEMENT OF CLAIM U.S.C. § 1983

21. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, The New York City Police Department policy-maker Commissioner James Onell, Detective James Meehan Sheld# 3554, Detective Steve Stanley Sheld#6445, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Defendants committed malicious prosecution and prosecutoral misconduct, and abuse of process with malice and falsy arrest without probable cause and without probable casue to prosecute, and Illegal search and seizure, and failing to adequately train and supervise its police officers, and failure to train its ADA and actions taken under coler of Law. The plaintiff is being Illegally detained and Illegally Imprisoned without True Bill of Indictment ever being filed with the Court, and being Illegally Imprisoned without a uniform sentence & commitment of a felony conviction ever being filed with the Court. In violation of the plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. The plaintiff is being subjected to creul and unusal punishment and deprived of his civil rights, and deprived of a right to due process of a trial and deprived of a right to equal protection of the Law and deprived of a right to speedy trial deprived due proces of Law.

22. Exhibit(3), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. The District Office ADA Shipla Kalra and the New York City Police Department. Used a fabricated manufactured search warrant to search and arrest the plaintiff without probable cause at his Home, located at 515 145th street in Harlem N.Y. The officers knocked on the plaintiff door identifying them as the N.Y.C. Fire Department. they then search and arrested the plaintiff without a arrest warrant and without a search warrant, the search warrant charged the plaintiff with 8 duplicious counts of Burglary in the third degree under penal Law § 140.25. that was created by ADA Shipla Kalra and the New York City Police Department. The search warrant had a incorrect target location and falsified information on it, without any affidavits on it. See occcorences Detective Meehan was the only witness and prejudice the plaintiff, with the following statement I veiwed stills from the survallance video from this incident and reconized the male as John Walden since i previosley aarest him in June 2011. See felony complaint screener sheet Detective Steve Stanley assresting office did not ever filed with the Court that the plaintiff was ever Arrested by the N.Y.C.P.D. And never prosecutted by the District Attorney Office. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

## STATEMENT OF CLAIM U.S.C. §§§1983 & 1985 & 1986

23. Statement of Claim U.S.C. §§§1983 & 1985 & 1986 against The City of New York and the Municipalty of New York The Supreme Court of New York County Hon. Jill Konviser, Court Appointed Attorney Lawrence Swartz, The District Attorney Office of New York County policymaker Cyruse Vance JR, Assistance District Attorney Shipla Kalra, The Defendants committed malicious prosecution and prosecutoral misconduct and abuse of process, and abuse of discretion and civil rights conspiracy with malice. The Municipality was alerted to the Unconstitutional action by its employes and it was a Unconstitutionak costum of policy, and that that an official policy of the Municipalty caused the Constitutional Injury. In violation of the plaintiff U.S.C.A. § 3612(a)(2), Right to be informed of charges within six months and Effective Assistance of Counsel, In violation of the plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. being Illegally detained and Illegally Imprisoned without a True Bill of Indictment, and without a uniform sentence & commiment of a felony conviction being filed with the Court, The plaintiff was subjected to cruel and unusal pusihment deprived of a right to fair trial and deprived due process of the Law, deprived of his civil rights and protection of the Law and deprived of a right to gurantees to a Jury trial.

24. Exhibit(6), In violation of the plaintiff 4th, 5th, 6th, 8th, 8th, And 14th, Amendment. Court Appointed Attorney Lawrence Swartz created a fabricated manufactred void Judgment CPL § 30.30(1)(a), CPL § 30.30(2)(a), Speedy Trial Motion dated Janurary 3, 2017. with no time and place to be herd when their was never a Indictment filed with the Court. The defective motion had all incorrect time when their was no time to correct, because the prosecuter and the Judge Jil Konviser could not prosecute the plaintiff. And their was never a Grand Jury Authorized, Attorney Swartz and Judge Konviser conspired with each othet to keep the plaintiff Illegally detained and to Illegally Imprisoned the plaintiff. By creating two fabricated manufactred motion a CPL § 30.30. speedy trial motion, and a fabricated manufactred motion that was created by Judge Judge Konvise dated March 7, 2016. Denying the fabricated manufactred speedy trial motion that was created by Attorney Swartz. Attorney also with held fabricated manufactred brady material and falsified exculpatory evidence, from the plaintiff and Illegall Court documents, he did not ever file any motions or adopt any motions for the plaintiff. Attorney Swartz and Judge Konviser new that plaintiff could not be prosecuted or convicted of a crime, and they new that they were violting his Constitutional Rigts. Cause Action Monell V Deprt of Soc Servs 436 U.S. 658.

(11)

# STATEMENT OF CLAIM U.S.C. §§§1983 & 1985 & 1986

25. Statement of Claim U.S.C. §§§1983 & 1985 & 1986 against The City of New
York and the Municipality of New York County, The Supreme Court of New York
County Hon. Jill Konviser, The District Attorney Office of New York County
policymaker District Attorney Cyrus Vance JR, Assistance District Attorney
Shipla Kalra, Court Appointed Attorney Lawrence Schwartz. The Defendants
committed malicious prosecution and prosecutoral misconduct, and abuse of dis-
crection, and civil rights conspriracy with malice. The Municipality was ale-
rted to the Unconstitutional action by its employes, and it was a Unconstitu-
tional custom of policy and that an official policy of the Municipality caused
the constitutional Injury. In violation of the plaintiff U.S.C.A. § 3612(a)(2)
Right to be infored of the charges within six months, and Ineffective Assist-
ance of counsel. In violation of the plaintiff Rights of The United States
Constitution, 4th, 5th, 8th, And 14th, Amendment. Being Illegally Detained and
Illegally Imprisoned without a True Bill of Indictment, ever being filed with
the Court, and being Illegally Imprisoned without a uniform sentence & commit-
ment of a felony conviction ever being filed with the Court. In violaion of
the plaintif civil rights, and deprived of a right to fair trial and deprived
of a right to due process of the Law, and deprived of a right to protection of
of the Law and cruel and unusal punishment, and deprived of a right to guran-
tees to a jury trial.

26. Exhibit(6), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th,
Amendment. Hon. Judge Konviser Intentionally created a fabricated manufactured
viod judgment opposition motion that was dated March 7, 2016. In Opposition
to release the plaintiff on speedy trial grounds, from the county jail. In
violation of his right to be informed of charges within six months, in viol-
ation of his 6th, Amendment Right U.S.C.A. § 3612(a)(2), the motion was a void
judgment and for thirty four monthts the plaintiff was Illegally detained in
the County Jail. Without ever being prosecuted and without a True Bill of a
Indictment ever being filed with the Court, and without a felony complaint
screener sheet or any other legal documents being filed with any of the Courts.
The defective Motion was created ten months before Ineffective Assistance
Lawrence Schwartz, created his void judgment speedy trial CPL § 30.30. on
Janurary 3, 2017. The plaintiff had five Ineffective Attorneys that did not
ever file any motion and did not ever file a speedy trial motion. The plain-
tiff said several times on the record in Judge Konviser Court room that the
Indictment was Jurisdictionally defective, and Judge Konviser on record admi-
ted something was wrong with the Indictment. Cause of Action Monell V Deprt
Soc. Servs 436 U.S. 658.

## STATEMENT OF CLAIM U.S.C. §§§1983 & 1985 & 1986

27. Statement of Claim U.S.C. §§§1983 & 1985 & 1986 against The City of New York and the Municipality of New York County, The Supreme Court of New York County Hon. Jill Konviser Hon. Arlene Goldberg, The District Attorney Office of New York County Policymaker Cyrus Vance JR, Assistance District Attorney Shipla Kalra, Court Appointed Attorney Susan Calvello, The Defendants committed malicious prosecution and procutoral misconduct, abuse of discretion and abuse of process with malic, and civil rights conspiracy. The municipalty was alerted to the Unconstitutional action by its employes, and failure to train and to supervise and discipline, and that an official policy of the municipality caused the constitutional injury. The plaintiff was Illegally Imprisoned without a True Bill of Indictment ever filed with a Court, and Illegally Imprisoned without a uniform sentence & commitment of a felony conviction ever being filed with a Court. In violation of the plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. The plaintiff was never prosecuted, he was deprived of a right to fair trial and deprived of his civil rights, and subjected to cruel and unusal punishment and deprived of protection of the Law and deprived of due process of Law, and deprived of effetive assistance of counsel and deprived of a right to speedy trial.

28. Exhibit(5), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. The Defendants committed civil rights conspiracy without the plaintiff ever being prosecuted. Conpiring with each other creating fabricated manufactured Statement of predicate conviction sheet Dated October 5, 2015. That was dated on the same day as the defective voluntary disclosure was created, without a Grand Jury vote and without any due process of Law. both that were signed and dated by ADA Shipla Kalra, and used by Hon. Jill Konviser and Hon. Arlene Goldberg for litigation purposes, to keep the plaintiff Illegally detained and to Illegally Imprisoned Him, without due proces of law and without a True Bill of Indictment ever being filed with Court. The Illegal falsified document say's on April 2, 2012. the plaintiff was convicted of a felony of Burglary in the Third degree penal Law § 140.20. and sentence upon that conviction was Imposed April 23, 2012. In Hon. Jill Konviser Court Room the plaintiff was never convicted in Judge Konviser Court or any other Court Room in 2012. The sheet is defective to be a predicate it must provide a list of institutions you were released from, and the clerk must ask do you have a constitutional chalenge. that did not happen because the plaintiff is not a carear criminal, and the defective sheet was never certified or filed in the Court. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

(13)

## <u>STATEMENT OF CLAIM U.S.C. §§§ 1983 & 1985 & 1986</u>

29. Statement of Claim U.S.C. §§§1983 & 1985 & 1986 against The City of New York and the Municipality of New York County, The Suprme Court of New York County Hon. Jill Konviser, Court Appointed Attorney William Kendall, The Distric Attorney Office of New York County policymaker Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Defendants committed malicious prosecution and prosecutoral misconduct, without probable cause to arrest and without probable cause to prosecute, and Ineffective Assistance of Counsel and civil rights conspiracy and abuse of process with malice. Without ever prsecuting the plaintiff, and deprivation of constitutional or statutory right and that an official policy of the municipality cause the constitutional injury. And Illegally detainig and Illegally Imprisoned the plaintiff without a True Bill of Indictment ever being filed with the Court, Illegally Imprisoned the plaintiff without a uniform sentence & commitment of a feony conviction ever being filed with the Court. In violation of the plaintiff Rights of The United Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. The plaintiff was subjected to cruel and unusal punishment and deprived of his speedy trial rights, and deprived of his civil rights and deprived of a right to fair trial, and deprived of a right to protection of the Law and deprived due process of the Law, and deprived gurantees to jury trial, deprived equel protection of Law.

30. Exhibit(1), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. Attorney William Kendall created a Defective Omnibus Motion with all correct information. Knowing that the plaintiff was never indited by a Grand Jury and knowing that the District Attorney Office did not ever file a felont complaint screener sheet, to prosecute the plaintiff. Attorney Kendall also did not ever file for a speedy trial motion for the the plaintif to be released from jail, The Omnibus motion was never filed filed with the Court. Attorney Kendall also new that their was never a arrest of the plaintiff filed with  the Court, he also did not ever give the plaintiff a notice of a Grand Jury proceeding. And he did not ever advise that their were four Grand Jury proceedings held. Attorney Kendall with held fabricated manufactured brady and exculpatory evidence from the plaintiff, and all other Illegal documents from the plaintiff. Attorney William Kendall also knew that the felony complaint screener sheet was never filed of filled out and that a bar code should Not have been on it, and that the District Attorney could not prosecute the plaintiff. <u>Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.</u>

31. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, Court Appointed Attorney Susan Calvello, The District Attorney Office of New York County policymaker Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Defendants committed malicius prosecution and prosecutoral misconduct, and abuse pf process with malice, and Ineffective Assistance of Counsel and deprivation of a Constitutional statutory Right, that an official policy of the Municipality caused the Constitutional Injury. The plaintiff is being Illegally Detained and Illegally Imprisoned without Due process of the Law, and Illegally Imprisoned without a True Bill of Indictment and without a uniform sentence & commitment of a felony conviction being filed with a Court, and being subjected to cruel and unusal punishment. In violation of the plaintiff Rights of The United States Contitution, 4th, 5th, 6th, 8th, And 14th, Amendment. And deprived of a Right to fair trial and deprived of a right to speedy trial, and deprived of a right to protection of the Law and deprived of His civil rights, and deprived of a His right to gurantees to a jury trial and deprived of a right to effective assistance of Counsel, without ever being prosecuted or convicted of a crime.

32. Exhibit(5), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amedment. Ineffective Assistance of Counsel Susan Calvello new that the plaintiff was not prosecuted, or convicted or sentence of a felony conviction. Attornet Calvello also new that their was never a felony complaint screener prosection data sheet, to prosecute the plaintiff as a felony offender. Attorney Calvello also new that their was never a felony complaint signed by the New City Police Department, or a witness of a crime or a witness that saw a crime take place. Attorney Calvello also new that their was never a felony complaint with a eleven digit bar code #2015NYO3270. To prosecute the plaintiff but Attorney Calvello did not that their was also a Defetcive felony complaint with a fabricated manufactred bar code on it #273078. That was also not filed with the Court, Attorney Calvello also admits on the sentence minutes that she with held fabricated brady material and exculpatory evidence from the plaintiff, she also admits on the record that she would not adopted any of plaintiff motions even to take his plea back, she ale also admits that she would not help the plaintiff becuase she was in trial on 100-count traffic Indictment, she also admits that she did not give the plaintiff any of his legal paperwork until the day he took the plea deal, and the other half on the day he got sentence on the dates of October 5, 2017. and December 1, 2017. Attorney Calvello New that the plaintiff was never prosecuted and that their was no Indictment filed with the Court. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

33. Statement of Claim U.S.C. § 1983 agagimst The City of New York and the Municipality of New York County, The Supreme Court of New York County Hon. Arlene Goldberg, The Department of Correction of the State of New York policymaker Commissioner Anthoney J. Annucci, Orleans Correction Superintendent Karen Crwly, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR Assistance District Attorney Shipla Kalra, Court Appointed Attorney Susan Calvello, The Defendants committed malicous prosecution and prosecutorial misconduct, and subjected to creul and unusal pinihment and abuse of discretion, and abuse of process with malice. And Illegally Imprisoned the plaintiff without a True Bill of Indictment ever filed with a Court, and being Illegally sentence to two Illegal sentences of a three to six years, and a six to twelve years of Imprisonment, without a uniform sentence & commitment of a felony conviction ever being filed with the Court, and without ever being prosecuted. And a practice so persistent and widspred that it constitutes a cutom though which notice is imposed upon policymaker. In violation of the Plaintiff Rights of The United States Constitution 4th, 5th, 6th, 8th, And Amendment. The plaintiff was deprived of a right tofair trial and deprived of his civil rights, deprived of protection of the Law, deprived of effective assistance of Counsel deprived of speedy trial and deprivde guratees to a jury trial.

34. Exhibit(5), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. Commissiner Anthoney J. Annucci of the Department of Corrections created a fabricated manufactred falsified reception classified system data sheet. To Imprisoned the plaintiff with aanother Illegal sentence of six to twelve years of Imprisonment, without being certified or authorized by the Court. The Commissioner then sent the UnAuthorized Directive to Suprintendent crowly at Orleans Correctional Facility. To Imprisoned the plaintiff for the next twelve years of his life, the UnAuthorized Directive that was sent to the Commissioner was fabricated and manufactred by Hon. Arlene Goldberg and ADA Shipla Kalra with a fabricated falsified predicate conviction sheet. The defective reception classified systen data sheet was dated Junurary 29, 2018. see Exhibit(6), The Attorney General Office defualt of a Article 78 without ever showing a True Bill of Indictment, or a uniform sentence & commitment and then created a fabricated falsified uniform sentence & commitment, to cover up the fact that the plaintiff was Not ever Indicted or prosecuted or convicted or sentence, and their was no Grand Jury to Indict. The State of New York and The City of New York Lack Subject Matter Jurisdiction. Cause cf Action Monell V. Deprt Soc Servs 436 U.S. 658.

(16)

## STATEMENT OF CLAIM U.S.C. § 1983

34. Statement of Claim U.S.C. § 1983 against The City of New York and the Municipality of New York County, The District Attorney Office of New York County policymaker Cyrus Vance JR, Assistance District Attorney Shipla Kalra, Court Appointed Attorney Susan Calvello, The Defendants committed malicious prosecution and prosecutorial misconduct, and abuse of process and abuse of discretion with malice. And policy and act of person with policy making authority for the municipality, and the municipality was alerted to the Unconstitutional actions by its employes. The plaintiff is being subjected to cruel and unusal punishment, and being Illegally Imprisoned to two Illegally sentences of a three to six years of Imprisonment, and a six to twelve years of Imprisonment, without ever being prosecuted and without a True of Bill of Indictment ever being filed with the Court, and without a uniform sentence & commitment of a felony conviction ever being filed with the Court. In violation of the plaintiff Rights of The United State Constitution, 4th, 5th, 6th, 8th, And 4th, Amendment. The plaintiff was deprived of a right to fair trial and deprivide of his civil rights, deprived of a right to due process of the Law, and deprived of effective assistance of counsel deprived protection of the Law,

35. Exhibit(5), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. Hon. Arlene Goldberg created a fabricated manufactred uncertified uniform sentence & commitment sheet. Without the plaintiff ever being convicted or prosecuted. To two Illegally sentences of a three to six years of Imprisonment, and used a UnAuthorized directive to sentence him to another Illegal sentence of a six to twelve years of Imprisonment. That was sent to the county jail and the Deprtment of Correction of New York State, on the datse of December 1, 2017. and Janurary 29, 2018. And the plaintiff was never prosecuted or convicted of a crime, Hon. Arlene Goldberg told the plaintiff that He would be only offered one plea deal and it would be the same one that He was offered by Hon. Jill Konviser, and that if He did not take that plea deal went trial and lost on any one of the counts, of the defective Indictment that she would run each of them consectively. And He would get ten to twenty years of Imprisonment on December 1, 2017. the plaintiff was sentence to a Illegal sentence of three to six years of Imrisonment. There after He Illegally detained on a stay of execution for sixty days in the county jail, they told and shpwed him that He was not sentence and that He would have to go back to Court to be Re-sentence, that did ever happenHon. Goldberg used a UnAuthorized directive to Resentence him to a Illegal six to twelve years of Imprisonment, that was sent to the Department of Corrections that was never filed with the Court. See Exhibit(5), Reception Classification System Legal Data Computation. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

36. Page 2, Lines 17,18,19,20,22, Defendant plead guilty bofore me on Otober 5, 2015. to All counts of the Indictment. He was promised six to twelve years as a second felony offender on each count with two counts to run consecutively with each other for a total of six to twelve years. that was a lie what the plaintiff was promised by Hon. Arlene Goldberg if He did not take the Illegal sentence that He was offered by Hon. Jill Konvise of a six to twelve years of Imprisonment, and go's to trial and lost any of the counts of the Defective Indictment, that would Run each one of the counts consecutively and that the plaintiff would get ten to twenty years of Imprisonment.if He lost. The plaintiff did not ever make any such deal to Run each one of the counts consecutively, and concurrent and consecutive to get two Illegal sentences of a three to six and a six to twelve years of Imprisonment.

37. Page 10, Lines 4,5,6,7,8,9, The plaintiff being sentence to a Illegall sentence that is not filed with as a conviction with the Court. Judge Goldberg sentencing: you are are sentence on each count to and indeterminate term of Imprisonment of three to six years. Counts one and four are to run consecuvely with each other. All other counts will run concurrent. One and four consecutive to each other "But Concurrent with all other counts. There was no three to six or six to twelve of a conviction for Imprisonment, Hon Goldberg does not ever say any thing about the other counts and she does not say any thing ever about a six to twelve years of Imprisonment eather. Not one of the Illegall sentences is filed with any Court in the State of New York, The uniform sentence and the Jurisdictionally defective Indictment is also not filed with the Court. The plaintiff was never prosecuted or convicted of a crime see Exhibit (1), felony complaint screener data sheet which must be completed and signed by a Judge, and the Bar code must not be it, the bar code must be on a felony complaint that was signed by the police and the witness, and filed with the courts of the State of New York. When Hon. Goldberg says run one and four consecutive "But all other counts that were three to six as well she sentence the plaintiff to a Illegal three to six, that is not filed with the Court then she uses a UnAuthorized directive, while being Illegally detained for sixty days she then uses the UnAuthorized directive, to Re-sentence the plaintiff to a Illegal six to twelve years of Imprisonment. without a True Bill of Indictment or a uniform sentence & commitment of a felony conviction ever being filed with the Court, and without ever being prosecuted.

38. Page 3, Lines 5,6,7,8,9,10,11,12,14,15,16,17,18,19, **THE PLAINTIFF BEGGING FOR HIS PEAL BACK**, THE COURT: he sent a letter that we received after, received I believe October 26, a letter dated October 26, asking for an extension to research the case law for motion to withdraw his plea. then he sent a motion-- MS CALVELLO: 10/24. THE COURT: Received November 6, A duplicate of the same allegations on November 27, All of these items were-- copies were made and sent to counsel. Did you recieve them? MS CALVELLO: yes. THE COURT: He indicates he cc'd DA's office. Are you adopting either of these? MS. CALVELLO: No, Judge. THE COURT: The cliams are without completely without merit in any event. Page 4, Lines 16,17,18,19,20,21,22,23,24,25, THE PALAIN-TIFF: Any way I can take my plea back? I am asking for my plea back. I would never tooken it if i had my paperwork and i had this information. can I please have my plea back? All my rights have been taken from me from the start of not getting my paperwork and I have been asking my lawer-- I have been calling my lawer the last two weeks. I put in a motion. I am asking can I please take my plea back. I don't want my plea. If you want to go to trial, I will go to trial. I don't want my plea.

39. Page 5, Lines 1,2,3,4,5,6,7,8,9,10,11,12,13, THE PLAINTIFF: This whole thing is defective. you shouled not be sentencing me for this, Mrs. Goldberg. you know this. I put that in my motion to you, to why I was taking my plea back. I asked you that and I would like a new Attorney. I would like it if you can please grant that and not just send me to prison all of my rights were violated. I didn't know evidence was fabricated and hidden from me. I didn't know all that was there. I have been asking her for eight months I had asked her for that. I asked my other attorneys I had for that. can you please give me a chance to fight this. I never had a chance. Page 6, Lines 6,7,8,9,10,11, 12,13,14,15,16,17,18,19,20,21,22,23,24,25, THE PLAINTIFF: Everything was not there. It was not there I was cutting my hand. My Question to you is wher if the video of me cutting my hand. THE COUR: Sir-- THE PLAINTIFF: That is my Questioning. I am asking you can I take my plea back, Can I take my plea back? THE COURT: No you cannot. The plea was kowing, voluntarily-- THE PLAINTIFF: No, it wasn't No, it wasn't. MS. CALVELLO: Judge I would like to put on the record, so everything is clea, there was paperwork handed over I was the fourth or fifth lawyer.

It's DNA material that Mr. Walden is talking about he says we did not discuss,
Just so it is clear. The assistant was nice enough to recopy everything to me.
I received that all in july. By August my exepert, Dr. Henning had already all
of that material that is now metioned in that motion by Mr. Walden. It was
analysed. It read. I had a conference with the doctor and the material was
given to Mr. Walden as well as that was--

40. Page 7, Lines 4,5,6,7,8,9,10,11,12,13,14,15,16,17,18,19,20,21,22,23,24,25,
THE PLAINTIFF: It was not given tome. you did not give me that until the day
we came here for sentencing. It is not even in the complaint. It is not even
in the disclosure or Bill of Particulars. It is not even in the discovery. It
is not even the indictment. It is not.
That's under 240.20. you are supposed to have that there and tell me that. you
not give me that. you didn't give me that until that day day because I would't
have did that. Ain't no way in hell I would have did something like that. you
are sitting here saying i am lying. you didn't. you handed me two. One befor
that and one on the 20th. you handed me two. There is no way i would have did
that . I wouldn't have took this sentence. There is no way. I've calling you
for two or three weeks. two or three weeks even prior to meet with you and ask
you to sit down and go over this. Maybe to ask to adopt the motions. Dis you--
I asked you if you could call me to the courtroom. I asked you that. MS. CALV_
ELLO: Stop screeming, Mr. Walden.

41. Page 8, Lines 1,2,3,4,5,6,7,8,9,10,11,12,13,14,15,16,17,18,19,20,21,22,23,
24,25, THE PLAINTIFF: I asked you that. I sorry abourt that. MS CALVELLO: stop
sceeming. THE COURT: you have to stop screeming and talking. MS CALVEELO: Let
the record be clear since November 1, I have been on trial on a 100-count
traffic indictment and ther are six defendants. and I made the time today. we
are not done and not going to be done until Janurary, which is why I could not
do a video. Because we are in court from 9 until 6 every day since November 1,
so I have not been ignoring those calls. Judge Dwyer is not giving time to
counsel wistits. That is wher I have been and will continue to be until Janu.
rary. I did take time to read all of the information at 11 0,clock at night
that is supplied very nicely by your law secretay and I would not have adopted
the motions. Just Mr. Walden is clear. I read it and would not adopt them. THE
COURT All right. THE PLAINTIFF: Okay-- THE COURT: Hold. you have to stop talk-
ing. THE PLAINTIFF: can I please take my plea back? THE COURT The anwer is no.

42. Page 9, Lines 19,20,21,22,23,24,25, THE PLAINTIFF: I don't agree. I do not agree with this. I do not agree with this. you are violating every one of my Constitutional rights. I should not sentenced today. I should not. I should have aright to get effective counsel. I don't have that. THE COURT: you have effective counsel. THE PLAINTIFF No. I don't No. I don't. No, I don't.

43. Page 10, Lines 1,2,4,5,6,7,8,9, THE PLAINTIFF: The complaint is defective everthing on the indictment is defective.

you are sentenced on each count to an indeterminate term of three to six years. Counts one and four are to run consecutively with each other. All other counts will be concurrent. One and four consecutive to each other "But concurrent with all other counts.

The plaintiff was never sentence to a three to six or a six to twelve years of Imprisonemt. The plaintiff was never prosecuted and was never convicted of a crime, the plaintiff was never even arrested their is no arrest of the plaintiff that was ever filed with court, the plaintiff was kidnapped by the District Attorney Office and the New York City Police Department. The plaintiff would ask the Defendants in this complaint to show the plaintiff and prove to the District Court that the plaintiff is convicted and Barred by Heck. And show the District Court that you the Defendants did not violate the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. The District Court should also no the plaintiff did never signed any thing to waive any of his rights, and he did not ever waive any of his right on the record. The plaintiff plea deal was not voluntary it was a involuntary plea To sum it all up the Dfendants did what they been doing fabricated and manufactured and falsified evidence. Exhibit(1) first page tells it all.

43. Statement of Claim U.S.C. §§§1983 & 1985 & 1986 against The City of New York and the Municipality of New York County, The State of New York Supreme Court Appellate Division First Department Justice Ellen Gesmer, The Supreme Court of New York County Hon. Arlene Goldberg, The District Attorney Office Of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Defendants commimtted malicious prosecution and prosecutoral misconduct, and civil rights conspiracy and abuse of process and and abuse of discretion with malice, and deprivation of a Constitutional statutory right, and requirement that particular policy be the moving force behide a Constitutional violation. that an official policy of the municipality caused the Constitutional injury. The plaintiff is being Illegally Imprisoned without a True Bill of Indictment, ever being filed with a Court. and being Illegally Imprisoned without a certified uniform sentence & commitment of a felony conviction ever being filed with the Court. The plaintiff is being subjected to cruel and unusal punishment and deprived of a right to fair trial and deprived of his civil rights, and deprived of protection of the Law and dperived of a right to due process of the Law, The plaintiff Rights of the United States Constitution, 4th,5th, 6th, 8th, And 14th, Amendment. Are being violated by the Defendants.

44. Exhibit(6), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. Justice Ellen Gesmer an Defendants created a fabricated manufactured uncertified Denying Leeave to Appeal. Under procedure Law § 450.15. and 460.15. that was sent to the plaintiff on the dates of March 19, 2019. and August 10, 2018. and Febuary 26, 2019. The issue is the plaintiff did not file a Application for leave to Appeal. Because the plaintiff was never convicted or sentence as a felony offender, and because the Appellate Court refuses to compel, the Defendants to show a True Bill of Indictment or a sentence of a conviction filed with the Court. The plaintiff has exhausted his remedys he has filed four Article 78 writ of prohibitions, to the Appellate Court and the defendants and they have defualt on all four of them. The Appellate Court has been conspring with the Defendants denying the plaintiff Article 78, to show proof of Jurisdiction. See Exhibit(4), Article 78 March 21, 2019 April 14, 2016. October 11, 2018. Janurary 11, 2018. Justice Ellen Gesmer created this defective Leave to Appeal falsified document so that the plaintiff would go away. The Defendants did not ever prosecute or convict the plaintiff and the defendants Lack Subject Matter Jurisdiction, that why they cant get past the Article 78 because its all about Jurisdiction. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

45. Statement of Claim U.S.C. §§§1983 & 1985 & 1986 against The Supreme Court of The State of New York Appellate Division First Department Deputy Clerk Margaret O. Sowah, The Attorney General Office of The State of New York policymakey Attorney General Lititia James Assistance Attorney General Charles Sanders, The Supreme Court of New York County Hon. Arlene Goldberg, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra. The Defendants committed malicious prosecution and procutoral misconduct and abuse of discretion, and abuse of process and civi rights conspiracy. The Defendants are conspring to with each other to keep the plaintiff Illegally Imprisoned without a True Bill of a Indictment being filed with the Court, and without a uniform sentence & commitment of a certified felony conviction ever being filed with the Court. And deprivation of constitutional or statutory right and Municipality alerted to the Unconstitutional by its employes, and failure to trainand supervise subordinates. In violation of the Plaintiff Rights of The United States Constitution , 4th, 5th, 6th, 8th, And 14th, Amendment. The plaintiff is being deprived of his civil rights deprived of a right to fair trial and deprived of a right to due process, deprived of a right to protection of the Law and subjected to cruel and unusal punishment, deprived of equal protection of the Law.

46. Exhibit(4)(6), In violation of the plaintiff 4th, 5th, 6th, 8th, And 14th, Amendment. On March 21, 2019. Janurary 11, 2018. April 14, 2016. The Appellate Court First Department and Defndants committed civil rights conspiracy. by sending the plaintiff three defective Notice of Entry on the the above dates that were never filed filed with the Court. They are from three Article 78 writ prohibitions that were denied on the dates question, to show proof of a True BIll of Indictment and if any prosecution of the plaintiff ever took place which did not happen. And if there was ever a felony conviction ever filed with the Court which also did not happen, on the date of April 4, 2019. the plaintiff filed a Reargunet motion to reargue a motion that was denied on March 21, 2019. that was denied with a defective Notice of Entry dated June 27, 2019. that is not filed with the Court and sent back to the Appellate Court and AttorneY General and defendants as rejected, the plaintiff then sent a Notice of Settlement to the Clerk of Court Deputy Margaret Sowah who is now apart of the conspiracy because she refuses to signed the Notice of Settlement to release the plaintiff on the defualt of settlement. Without any Opposition from the defendants which the plaintiff filed to be signed the Clerk on July 28, 2019. by the Deputy Clerk Margaret Sowah. The plaintiff is being Illegally Imprisoned. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

47. Statement of Claim U.S.C. §§§1983 & 1985 & 1986 against The City of New York and the County of New York, The Supreme Court of New York County Hon. Arlene Goldberg, The District Attorney Office of New York County policymaker District Attorney Cyruse Vance JR, Assistance District Attorney Shipla Kalra, The New York City Police Department policymaker Commissioner James Onell Detective James Meehan Sheld#6445, Detective Steve Stanley Sheld#6554, The Defendants committed malicious prosecution and civil rights conpiracy, and without probable cause to arrest and without probable cause to prosecute and Illegalle search and seizure, an abuse of process with malice. The plaintiff is being Illegally detained and Illegally Imprisoned without True of Indictment, and without a uniform sentence & commitment of a felony conviction being filed with the Court. In violation of the plaintiff Rights of The United State Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. an failure to trian its ADA and failure to adeuatley train and supervise its police officers, actions under the coler of Law. The plaintiff was deprived of due process of the Law deprivied of a fair trial deprived of his civil rights and protection of Law.

48. Exhibit(3), In violation of the plaintif 4th, 5th, 6th, 8th, And 14th, Amendment. The Defendants in the above capition conspired with each other in civil rights conspiracy action. To create a fabricated manufactred with falsified information, Order of Supoena under Title 18, § 2703 of the United States Code, ording Metro Pcs/T-Mobile and Sprint Spectrum. The disclosure of all of the plaintiff cell phone information, cell sites incoming calls out going calls text messeges and all other information on the plaintiff phone. The Illegally Order of Supoena was signed and dated by Judge Jill Konviser and ADA Shipla Kalra, on the dates March 10, 2017. and March 15, 2017. Detective James Meehan and Detective Stanley sent falsified information to ADA Shipla Kalra to be used on the UnAuthorized document. ADA Shipla Kalra and defendants uses treats agaist Metro Pcs/T-Mobile if they dont disclose the information, that if they dont they will face a fine contempt and that could be Imprisoned, a "Class "A" Misdemeaner. The defendants also adds a seven count Defective felony complaint to the UnAuthorized document. The plaintiff did not ever give permission to the defendants to search his cell phone, The ADA Shipla Kalra and Judge Konviser new that they could not prosecute the plaintiff, they asked for the dates of July 1, 2015. until August 20, 2015. Filed with the Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

48. Statement of Claim U.S.C. §§§1983 & 1985 & 1986 against The City of New York and the Municipality of New York County, The Supreme Court of New York County Hon. Arlene Goldberg Hon. Jill Konviser, The District Attorney Office of New York County policymaker District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, The Attorney General Office of the State of New York policymaker Attorney General Lititia James Assistance District Attorney Charles Sanders, The Defendants committed malicious prosecution and prosecutoral misconduct, and civil rights conspiracy and abuse of process and malice. The Municipality was alerted to the Unconstitutional action by its employes and requirement that particular policy be the moving force behide a Constitutional violation, deprivation of a Constitutional or statutory rights. The plaintiff is being Illegally Imprisoned without ever being prosecuted and without a True Bill of Indictment, and without a uniform sentence & commitment of a felony conviction ever being filed with the Court, without due process of the Law and deprived of a fair trial. In violation of the plaintiff Rights of The United States Constitution, 4th, 5th, 6th, 8th, And 14th, Amendment. and deprived of his civil rights and subjected to cruel and unusal punishment.

49. Exhibit(4), In violation of the palintiff 4th, 5th, 6th, 8th, And 14th, Amendment. The Attorney General and Defendants have Defualt four times on four Article 78 writ of prohibition motions. On the dates of April 14, 2016. October 11, 2018. Janurary 11, 2018. March 21, 2019. To compel the defendants to show proof of Subject Matter Jurisdiction, and a True Bill of Indictment and proof of a speedy trial motion being filed with the Court, as well as a uniform sentence & commiment of a felony conviction, being filed with the Court. All Article 78 motion were denied by the Appelate Divission First department, without any reason of Law. The Defendants did ever show proof of the plaintif ever being prosecuted, and that it ever had Subject Matter Jurisdiction. After the defualt of March 21, 2019. like all other defualts in the past. The Assistance Attorney General Charles Sanders, Hon. Goldberg Hon. Konviser and ADA Shipla Kalra, conspired with each other to create two Illegal fabricated manufactred opposition motions to the plaintiff, that were not filed with the Court. A falsified speedy trial motion that was created by Hon. Konviser and ADA Kalra dated March 7. 2016. and a falsified uniform sentece & commitment created by Hon. Goldberg and ADA Kalra. The Defendants used civil rights conspiracy to keep the plaintiff Illegally Imprisoned without ever being prosecuted. Cause of Action Monell V. Deprt Soc Servs 436 U.S. 658.

49. THE PLAINTIFF WAS DENIED A FAIR TRIAL WITH MALICIOUS PROSECUTION, WITH FABRICATED MANUFACTRED EVIDENCE, WITH MALICE AND WAS NOT EVER PROSECUTED. IN VIOLATION OF HIS RIGHTS OF THE UNITED STATES CONSTITUTION, 4th, 5th, 6th, 8th, and 14th, AMENDMENTS. THE PLAINTIFF IS INTENTIONALLY SUBJECTED TO VINDICTIVE PROSECUTION TACTIVES, AND SUBJECTED TO CRUEL AND UNUSAL PUNISHMENT, AND IT IS CLAIMED THAT THE CITY OF NEW YORK AND MUNICIPALITY OF NEW YORK COUNTY, AND THE STATE OF NEW YORK, COMMITTED MALPRACTICE MOREOVER AS A CONPIRACY CLAIM IS BEFORE THIS COURT, FOR CONSPIRING WITH OTHERS INCLUDING NUMEROUS LEGAL AID AND (18)(B) ATTORNEY"S ASSIGNED T O THE PLAINTIFF, TO ILLEGALLY DETAINED AND ILLE-GALLY IMPRISONED THE PALINTIFF, WITHOUT A WITHOUT DUE PROCESS OF THE LAW AND WITHOUT TRUE BILL OF INDICTMENT EVER BEING FILED WITH THE COURT, AND WITHOUT A UNIFORM SENTENCE IN COMMIMENT OF A FELONY CONVICTION BEING FILED WITH THE STAT OF NEW YORK, TO TWO ILLEGALLY SENTENCES OF A THREE TO SIX AND A SIX TO TWELVE YEARS OF IMPRISONMENT, THE PLAINTIFF WAS OF DEPRIVED OF HIS CIVIL RIGHTS DEPR-IVED OF A RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AND DEPRIVED OF A RIGHT TO SPEEDY TRIAL, DEPRIVED OF A RIGHT TO PROTECTION OF THE LAW, DEPRIVED OF HIS RIGHT TO GURANTEES TO JURY TRIAL AND DEPRIVED OF A RIGHT TO ILLEGAL SEARC AND SEIZURE, THE PLAINTIFF IS CLAIMING MALICIOUS PROSECUTION WITH FABRICATED AND MANUFACTRED WITH FALSIFIED EVIDENCE, WITHOUT EVER BEING PROSECUTED WITHOUT A TRUE BILL OF INDICTMENT OR UNIFORM & COMMITMENT BEING FILED IN THE STATE OF NEW YORK, WITHOUT DUE PROCES OF THE LAW, AND DEPRIVED OF HIS RIGT TO BE INFORMED WITHIN SIX MONTHS OF CHARGES, FALSE IMPRISONMENTAND FALSE ARREST, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, GOSS NEGIGENCE AGAINST THE CITY OF NEW YORK AND MUNICIPALITY OF NEW YORK COUNTY AND DEFENDANT"S OBSTRUCTED JUSTICE, BY MANUFACTRED MANUFACTURING AND FALSIFING EVIDENCE, AND CONSPIRACY TO ILLEGALL IMPRISONED THE PLAINTIFF WITHOUT DUE PROCESS OF THE LAW, AND TO PUT HIS LIFE IN DANGER (SEE 42 U.S.C. §§§1983 & 1985 & 1986), THE PLAINTIFF HAS SUFFERED EMOTIONAL AND ALSO PHYSICAL & MENTAL SUFFRING AND REQUEST MONITTI-ERAY AND COMPETSATOREY DAMAGES IN THE FULL AMOUNT OF $ 25.000.000.00 DOLLARS. AND FOR EACH DAY THAT THE PLAINTIFF IS BEING ILLEGALLY IMPRISONED WITHOUT EVER BEING PROSECUTED AND WITHOUT A TRUE BILL OF INDICTMENT, AND WITHOUT A UNIFORM SENTENCE & COMMITMENT OF A FELONY CONVICTION BEINGFILED WITH THE COURT, UNITL THE PLAINTIFF IS RELEASED $ 5000 DOLLARS A DAY UNTIL THE PLAINTIFF HAS BEEN RELEASED. THE STATE OF NEW YORK COURTS LACK SUBJECT MATTER JURISDICTION.

EXECUTED THIS ___23___ DAY OF AUGUST 2019.

JOHN WALDEN PRO-SE

I declare under penalty of pujury that on August___23___2019. I deliverd this
Rule 15(15) Amended Supplemental Civil Rights Complaint 42 U.S.C. §§§1983 &
1985 & 1986. to the autorities at Orleans Correctional Facility to be mailed
to the United States Postal Service to the Southern District Court Of New York

I declare under penalty of purjury that the forging is true and correct.
Dated: August ___23___ 2019. _____
                                    Signature of Plaintiff


John Walden _____

Name of Prison Facility and
Address, Orleans Correctional
Facility, 3531 Gaines Basin Road
Albion N.Y. 14411. _____

Din# 18R0155. _____

EXHIBIT
(1)

# Criminal Court of the City of New York

## New York County

## Felony Complaint

The People of the State of New York
vs.

| DEFENDANT: | | CHARGES: | DOCKET |
|---|---|---|---|
| John Walden (M 49)<br>M15662105    08/20/2015 09:00<br>515 WEST 145 STREET<br>MANHATTAN NY | M15662105 | PL 140.20 | 2015NY053270 |

Interpreter: Language _____    Screener: KALRA, SHILPA - TB30

## Notices Served at Arraignment:

- [ ] CPL 190.50 - Grand Jury
- [ ] Cross Grand Jury
- [ ] Waive Cross Grand Jury
- [ ] CPL 710.30(1) (A) - Statement
- [ ] CPL 710.30(1) (B) - Identification
- [ ] CPL 250.20 - Alibi
- [ ] PL 450.10(48 hrs /15 days) - Property

- [ ] OTHER: _____

## Adjournment:

Part: _____ Date: _____
- [ ] CPL 180.80/30.30 Waived

## Bail Condition:

_____ / _____ / 
(Ins. Co. Bond)    (Cash)    (Other) _____

- [ ] Surety Exam - 48 hours/72 hours
- [ ] Temporary Order of Protection
- [ ] ART. 730 Exam Ordered
- [ ] Medical Attention
- [ ] Protective Custody
- [ ] Suicide Watch
- [ ] Psychiatric Evaluation

| Arresting Officer | Court Reporter | Date | Part |
|---|---|---|---|
| STEVEN STANLEY | | | |

Judge: _____

NEW YORK CITY

CRIMINAL JUSTICE AGENCY Interview

| INTERVIEW REPORT | CJA LOG Page | Line # | Precinct | Arrest # |
|---|---|---|---|---|
| | 12 | 10 | 018 | M15662105 |

| Name: | WALDEN, JOHN | | Name (on this arrest) from NYSID/Arrest | |
|---|---|---|---|---|
| Age: | 49 | Interview Date: 2015-08-20 | Report: | JOHN WALDEN |
| DoB: | 1965-11-26 | Interview Time: 14:02:00 | NYSID: | 09987141Z |
| Sex: | MALE | CJA Interviewer: N150 | Arrest Date: 2015-08-20 | Arrest Time: 09:00:00 |
| Hispanic? | NO | Interview Location: CB | Arrest Charges: 1. 140.20 | 2. |
| Race: | BLACK | Interview Language: ENGLISH | 3. | 4. |

## RESIDENCE/FAMILY

| | | | |
|---|---|---|---|
| Current Address: | 399 9TH AVENUE, 5 — *Old place* | Prior Address: | DK EAST 126TH STREET |
| City, State, Zip: | NEW YORK, NY, 10001 | City, State, Zip: | NEW YORK, NY 99999 |
| Lives With: | Lives Alone | | |
| Contact: | SELF | Contact: | RA |
| Relationship: | | Relationship: | FRIEND |
| Phone #: | 347-488-8777 | Phone #: | NA |
| Length at Current Address: Years | 4 Months Weeks *(unknown)* | Length at Prior Address: Years 5 Months | |
| | | Contact still Resides at Prior Address? NO | |
| Alternate Address: *Family – mom has dementia – NY* | | Expects Someone at Arraignment? NO | |
| City, State, Zip: *2 kids – S.F.* | | Name: | |
| Contact: *Marissa* | | Relationship: | |
| Relationship: *W.C.* | | | |
| Phone #: | | | |

## EMPLOYMENT

| | | | |
|---|---|---|---|
| Employed? | UNEMPLOYED | Does Defendant Provide Support for Others? | NO |
| Job/Position: *(City) – self-employed* | | If "Yes" How Many? | |
| Employer: *Boston – calling school* | | Other Sources of Financial Support: | Welfare Defendant |
| Address: | | | |
| City, State, Zip: | | | |
| Length of Employment: Years: | Months: | Highest Grade: | 16 |
| Hours Worked/Week: | | In School? | NO |
| Avg. Net Pay: | | Name: | |
| Pay Period: | | In Training Program? | NO |
| Length of Unemployment: Years: | Months: 1 | Name: | |
| Other Employment Status: | NONE | In Treatment Program? | NONE |

## CRIMINAL RECORD

| First Arrest (Excluding Violations)? | Warrant Attached to NYSID? | Prior Warrant? | # of Prior Felony Convictions | # of Prior Misdemeanor Convictions | Open Cases |
|---|---|---|---|---|---|
| NO | NONE | NO | 2 | 1 | 0 |

Gray Shading = Information from Official Sources

| LEGEND: | NP | = No Phone | RA | = Refuses to Answer |
|---|---|---|---|---|
| Miscellaneous Comments | DK | = Doesn't Know | NC | = Not Calculated |
| | NA | = Not Applicable | No Shading | = Information from Defendant |

This report assesses the defendant's risk of flight by considering the following: community ties and warrant history as defined in sections 2(a)(ii) and 2(a)(iii)&(vi) of CPL 510.30 and open cases. However, a positive assessment is withheld for defendants with outstanding bench warrants attached to their NYSID sheet at the arrest. This report does not consider other criteria listed in CPL 510.30 such as the defendant's mental condition, the weight of the evidence, or the possible sentence.

## DEFENDANT'S RESPONSE VERIFICATION

CJA RECOMMENDATION

| | | | |
|---|---|---|---|
| 1 | Has the defendant lived at his/her current address for 1.5 years or more? | YES | |
| 2 | Does the defendant live with parent, spouse, C/L spouse of 6 months, grandparent, or legal guardian? | NO | |
| 3 | Does the defendant have a working telephone in residence/cell phone? | YES | 1 |
| 4 | Does the defendant report a NYC area address? | YES | 0 |
| 5 | Is the defendant employed, or in school or training program, full time? | NO | -1 |
| 6 | Does the defendant expect someone at arraignment? | NO | -1 |
| 7 | Does Prior Warrant equal Zero? | YES | 5 |
| 8 | Does Open Case equal Zero? | YES | 1 |
| | | TOTAL POINTS | 5 |

MODERATE RISK FOR ROR

Verification Reference Source: NO CONTACTS PROVIDED

CJA is not the official source of data provided in gray-shaded area

# Alerts Sheet

| | | | | | |
|---|---|---|---|---|---|
| Arrest ID: | M15662105 | Arrest Date: | 2015-08-20 | Arrest Time: | 09:00:00 |
| Name: | WALDEN, JOHN | Sex: | MALE | Race: | BLACK |
| NYSID: | 09987141Z | DOB: | 26-Nov-1965 | | |

## Charges:

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS |
|---|---|---|---|---|---|
| TOP | N | PL 1402000 | D | A | 1 |

Additional Paperwork Received:  N

Notes:

DEFENDANT SOUGHT AS PERP ON ICARD NO. I2015027426. NOTIFIED PO ROHE @ RISC/PO SANCHEZ IN ROOM 132.

DEFENDANT SOUGHT AS PERP ON ICARD NO. I2015026452. NOTIFIED PO ROHE @ RISC/PO SANCHEZ IN ROOM 132.

DEFENDANT SOUGHT AS PERP ON ICARD NO. I2015025650. NOTIFIED PO ROHE @ RISC/PO SANCHEZ IN ROOM 132.

NO RECORDS FOUND FOR ICARD NO. I2015025632. ICARD CANCELLED.
NO RECORDS FOUND FOR ICARD NO. I2015026449. ICARD CANCELLED.
NO RECORDS FOUND FOR ICARD NO. I2015027307. ICARD CANCELLED.

## Warrants:

Warrant Search Type:    **NYSID Search**

Warrant Type:    **I-Card**

| Warrant Num | Warrant Date | Warrant Indictment Num | Warrant Docket Num | Def Name | Def Sex | Def DOB | Def NYSID |
|---|---|---|---|---|---|---|---|
| I2015025632 | 05-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |
| I2015025650 | 05-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |

Warrant Search Type:

Warrant Type:    **I-Card**

| Warrant Num | Warrant Date | Warrant Indictment Num | Warrant Docket Num | Def Name | Def Sex | Def DOB | Def NYSID |
|---|---|---|---|---|---|---|---|
| I2015027426 | 18-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | |

Warrant Search Type:    **NYSID Search**

Warrant Type:    **I-Card**

| Warrant Num | Warrant Date | Warrant Indictment Num | Warrant Docket Num | Def Name | Def Sex | Def DOB | Def NYSID |
|---|---|---|---|---|---|---|---|
| I2015026452 | 11-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |
| I2015027307 | 17-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |
| I2015026449 | 10-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

---

THE GRAND JURY OF THE COUNTY OF NEW YORK, by this indictment, accuses the

defendant of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law

§140.20, committed as follows:

The defendant, in the County of New York, on or about July 7, 2015, knowingly entered and

remained unlawfully in the building of RPG located at 119 West 57th Street with intent to commit a

crime therein.


SECOND COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant

of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law §140.20,

committed as follows:

The defendant, in the County of New York, on or about July 14, 2015, knowingly entered

and remained unlawfully in the building of Deep Focus located at 460 Park Avenue South with

intent to commit a crime therein.

**THIRD COUNT:**

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law §140.20, committed as follows:

The defendant, in the County of New York, on or about July 28, 2015, knowingly entered and remained unlawfully in the building of Stripes Group located at 402 West 13th Street with intent to commit a crime therein.

**FOURTH COUNT:**

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law §140.20, committed as follows:

The defendant, in the County of New York, on or about August 8, 2015, knowingly entered and remained unlawfully in the building of MCD Partners located at 138 West 25th Street with intent to commit a crime therein.

**FIFTH COUNT:**

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law §140.20, committed as follows:

The defendant, in the County of New York, on or about August 14, 2015, knowingly entered and remained unlawfully in the building of Insignia located at 6 East 39th Street with intent to commit a crime therein.

**SIXTH COUNT:**

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law §140.20, committed as follows:

The defendant, in the County of New York, during the period from August 14, 2015 to August 17, 2015, knowingly entered and remained unlawfully in the building of PAC Program located at 6 East 39th Street with intent to commit a crime therein.

**SEVENTH COUNT:**

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law §140.20, committed as follows:

The defendant, in the County of New York, on or about August 17, 2015, knowingly entered and remained unlawfully in the building of Dr. Estelle Lasaundra located at 20 East 46th Street with intent to commit a crime therein.

**EIGHTH COUNT:**

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law §140.20, committed as follows:

The defendant, in the County of New York, on or about August 17, 2015, knowingly entered and remained unlawfully in the building of XG Consultant Group located at 20 East 46th Street with intent to commit a crime therein.

NINTH COUNT:

AND THE GRAND JURY AFORESAID, by this indictment, further accuses the defendant of the crime of **BURGLARY IN THE THIRD DEGREE**, in violation of Penal Law §140.20, committed as follows:

The defendant, in the County of New York, on or about August 18, 2015, knowingly entered and remained unlawfully in the building of Work Group located at 560 Broadway with intent to commit a crime therein.

CYRUS R. VANCE, JR.
District Attorney

goes.  I'm going to step out for just one

minute.

(ADA KALRA STEPS OUT OF GRAND JURY

ROOM AND RETURNS)

Q.    This is the video that you pulled,

is that correct?

A.    Correct.

MS. KALRA:  I'm just going to fast

forward to the end of it

(MACHINE TURNED ON, VIDEO BEING

PLAYED)

MS. KALRA:  All of it is in

evidence.

Q.    That's the individual, is that

correct?

A.    Yes.

Q.    And those are the laptops, is that

right?

A.    Yes.

Q.    And just, if you could, briefly

describe what the male was wearing?

I note the grand jury saw it, but

if you could put it on the record.

A.    Looks like he was wearing a white

shirt with a black backpack that he had on.

Q.    Looked like a white chef coat, is that right?

A.    Yeah.

MS. KALRA:  All right.  I have no further questions for this witness.

Are there any questions from the grand jury?

Seeing none, you're excused.

(MACHINE TURNED OFF)

(WITNESS EXCUSED)

Meehan

A.    Yes.

Q.    And as a result of that investigation, did you make an arrest?

A.    Yes.

Q.    And who did you arrest?

A.    John Walden.

Q.    Now, just to be clear, I -- have you ever had any prior contact with the defendant, John Walden?

A.    Yes.

Q.    And how many hours of contact would you say that included?

A.    Three.

Q.    Three hours?

A.    Yeah.

Q.    And then during the course of this arrest, how many hours of contact did you have with the defendant?

A.    About three also.

MS. KALRA:  Now, you heard testimony from the detective that he had prior contact.  You're not to speculate as to what that contact is, but just to consider that in terms of determining his credibility regarding -- in regard to

investigation, did you execute a search warrant

at 515 West 145th Street, Room 3210?

A.     Yes.

Q.     And was that search warrant duly

signed by a judge?

A.     Yes.

Q.     And is that the same room where the

defendant was staying and apprehended?

A.     No.

Q.     All right.  Now, I'm going to mark

for identification a series of photos, 1 -- 9-A

through G.  I'll just deemed them marked for

now.  Do you recognize those photos?

A.     Yes, I took them.

Q.     And what are they photos of?

A.     The first one is five watches, the

second and third is the front and the back of a

US silver dollar coin, the fourth is the black

backpack with the white stripe, the fifth is

the white chef's jacket, the sixth is two

chisels, and the other is a photo of his

sneakers he was wearing, John Walden.

Q.     So, minus the last photo of the --

of the sneakers that Mr. Walden was wearing,

the other photos are all property that you

Q.   You are -- these are your initials on the disc before you, correct?

A.   Yes, it is.

MS. KALRA:  At this time, I'm moving into evidence Grand Jury Exhibit Number 11.

Q.   Now, detective, if you could briefly describe for the Grand Jury what that video shows.

A.   The video footage shows -- it's a camera.  It's of the lobby of the location.  It shows the defendant exiting the building.

Q.   When you say defendant you mean a male, correct?

A.   Yes.

Q.   Can you describe what that person looks like?

A.   He is a male black wearing a white shirt.  I don't know roughly five six, five seven.

Q.   When you say white shirt, can you describe is it a chef jacket, a button-down?

A.   A chef jacket.

Q.   Do you recall what color his pants were?

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

FELONY

John Walden (M 49),

ADA Shilpa Kalra
(212) 335-9095

Defendant

Detective James Meehan, Shield 06445 of the Midtown South Precinct Detective
Squad, states as follows:

*The defendant is charged with:*

PL 140.20

Burglary in the Third Degree.
(defendant #1: 7 counts)

At the times and places described below in the County and State of New York,
the defendant knowingly entered and remained unlawfully in a building with intent to
commit a crime therein.

*The factual basis for this charge is as follows:*

I am informed by an individual, of an address known to the District
Attorney's Office, that he is the office manager for an advertising company located at 460
Park Avenue South, 5th floor, New York, NY. I am further informed that on July 14, 2015,
he noticed that approximately 7 Apple laptops were missing. I observed surveillance video
from July 14, 2015 at 460 Park Avenue South, 5th floor that shows a male, dressed in a white
chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and use a
tool to pry the office door open. The video further shows the male leave about 15 minutes
later with a full backpack. I recognized the male in the video as the defendant, John Walden
since I previously arrested him in June, 2011.

I am informed by a second individual, of an address known to the
District Attorney's Office, that he is the CEO for a Title Agency located at 6 East 39th
Street, 7th floor, New York, NY. I am further informed that on August 14, 2015, he
observed surveillance video from August 14, 2015 at 6 East 39th Street, 7th floor that shows
that at about 7:30pm a black male, dressed in a white chef jacket, black pants, and a black
backpack, enters the office on the 7th floor, pries the office door open, and enters the office.
The video further shows the male running out a few minutes later. I also watched the video
and recognized the male in the video as the defendant John Walden.

I am informed by a third individual, of an address known to the District

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

John Walden (M 49),

Defendant.

FELONY

ADA Shilpa Kalra
(212) 335-9095

Detective James Meehan, Shield 06445 of the Midtown South Precinct Detective Squad, states as follows:

*The defendant is charged with:*

PL 140.20                    Burglary in the Third Degree
                             (defendant #1: 7 counts)

*At the times and places described below in the County and State of New York, the defendant knowingly entered and remained unlawfully in a building with intent to commit a crime therein.*

*The factual basis for this charge is as follows:*

I am informed by an individual, of an address known to the District Attorney's Office, that he is the office manager for an advertising company located at 460 Park Avenue South, 5th floor, New York, NY. I am further informed that on July 14, 2015, he noticed that approximately 7 Apple laptops were missing. I observed surveillance video from July 14, 2015 at 600 Park Avenue South, 5th floor that shows a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and use a tool to pry the office door open. The video further shows the male leave about 15 minutes later with a full backpack. I recognized the male in the video as the defendant, John Walden since I previously arrested him in June, 2011.

I am informed by a second individual, of an address known to the District Attorney's Office, that he is the CEO for a Title Agency located at 6 East 39th Street, 7th floor, New York, NY. I am further informed that on August 14, 2015, he observed surveillance video from August 14, 2015 at 6 East 39th Street, 7th floor that shows that at about 7:30pm a black male, dressed in a white chef jacket, black pants, and a black backpack, enters the office on the 7th floor, pries the office door open, and enters the office. The video further shows the male running out a few minutes later. I also watched the video and recognized the male in the video as the defendant John Walden.

I am informed by a third individual, of an address known to the District

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

John Walden (M 49),

Defendant.

FELONY

ADA Shilpa Kalra
(212) 335-9095

Attorney's Office, that he is a physician for the "PAC Program," located at 6 East 39th Street, 4th floor, New York, NY. I am further informed me that on August 17, 2015 that the door was damaged, the safe had been moved, and property, including Cuban cigars, 20 American Eagle Silver Dollar coins, 7 watches, US currency, and 20 Citibank checks in the name of "Pac Program," and multiple US Treasury Bonds, was missing from the office. One American Eagle Silver Dollar was recovered from the defendant's person.

I am informed by Detective Kevin Buehler, SHield 4387, that he spoke to an employee from RPG Incorporated located at 119 West 57th Street, Room 906, New York, NY who observed surveillance video from July 7, 2015 at 119 West 57th Street, Room 906 that shows that at about 6:30pm, a male, dressed in a white chief jacket, black pants, and a black backpack, enter the office on the 9th floor, attempts to open several office doors, and enter some of the offices. I am further informed that the video further shows the male leaving about 15 minutes later with a large black backpack I am further informed that male who entered the office is not an employee of RPG Incorporated and i Apple laptop was missing after the male entered the office. I viewed stills from the surveillance video from this incident, and recognized the male in the video as the defendant.

I am informed by Detective Buehler, that he spoke to an employee from a company located at 20 East 46th Street, 4th Floor, New York, NY, a commercial office building, who observed surveillance video from August 17th, 2015 at 20 East 46th Street, 4th Floor, New York, NY that shows that at about 5:45pm, a black male, dressed in a white t-shirt, dark pants, and a black backpack, enter the office on the 4th floor, and enters 2 separate offices. I am further informed that the video further shows the male leaving about 15 minutes later with a large black backpack. I am further informed that the male who entered the office is not an employee of the company located 20 East 46th Street, 4th Floor. I am further informed there was damage to both office doors and 1 Acer laptop, 1 Toshiba laptop, 1 Lenovo laptop, 1 ASUS laptop, and 1 digital camera was missing after the male entered the offices. I viewed stills from the surveillance video from this incident and recognized the male in the video as the defendant.

I am informed by Detective Elvis Monzaivo, Shield #78, that an employee from Stripes Group located at 402 West 13th Street, 4th Floor, New York, NY, a commercial

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

FELONY

-against-

ADA Shilpa Kalra
(212) 335-9095

John Walden (M 49),

Defendant.

2732078

office building, observed surveillance video from July 28th, 2015 at 402 West 13th Street, 4th Floor, New York, NY that shows at about 6pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enters the office on the 4th floor, and enters multiple offices. I am further informed that the video further shows the male touch 2 pieces of paper in the office and leave about 15 minutes later with a large black backpack. I a further informed that the male who entered the office is not an employee of Stripes Group and that 1 Samsung laptop and 1 Lenovo Thinkpad was missing after the male entered the offices. I viewed stills from the surveillance video and recognized the male in the video as the defendant. I reviewed an BCI report which shows that a latent print was recovered from the above paper and matched the defendant.

I am informed by Detective John Hidalgo, Shield 584, that an employee from Principle MCD Incorporated located at 138 West 25th Street, 5th Floor, New York, NY a commercial office building, observed surveillance video from August 8th, 2015 at 138 West 25th Street, 5th Floor, that shows that at about 12:25pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and attempts to pry the office door open with a tool and, then uses his body to open the door. I am further informed that the video has sound and when the male enters the office, the alarm goes off and shows the male leave about one minute later with a large black backpack. I am further informed that the male who entered the office is not an employee of Principle MCD Incorporated and 2 Dell laptops and 3 Macbook laptops were missing after the male entered the office. I viewed stills from the surveillance video and recognized the male in the video as the defendant.

False statements made in this written instrument are punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.

Detective James Meehan

_____     _____
Date                        Time

## ARRAIGNMENT INFORMATION SHEET

| Defendant | Age | Bail | Diversion | A Testified in GJ |
|---|---|---|---|---|
| JOHN WALDEN 2015JX053210 | 49 | $5000 current 10K / 1500 | Eligible | Y |

**PLEA OFFER / RECOMMENDATION** | **Approved**

Plead to small crime 24020 WORK Diversion will
satisfy _____ det _____

| Occurrence Date | Approx Time | Location | Pct |
|---|---|---|---|
| SEE ATTACHED | | | |

### People v. John Walden

**FACTS:**

Incident 1: July 1, 2015, at 149 West 67th Street, Room 906. Video shows that at about 6:30pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 9th floor, attempts to open several office doors, and exits some of the offices. Shows male leaving about 15 minutes later with a large black backpack. Reported missing: 2 Apple laptop.

Incident 2: July 14, 2015, 860 Park Avenue South, 5th floor. Video shows a male dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor and uses a tool to pry the office door open. The video further shows the male leave about 5 minutes later with a full backpack. 2 Apple laptops were missing.

Incident 3: July 28, 2015, at 402 West 19th Street, 4th floor. Video shows that about 6pm, a male, dressed in a white chef jacket, black pants, and a black backpack enter the office, tries to open an office door, and leaves after shows the male leave about 2 minutes later with a large black bag about 15 minutes later with a large black backpack. Recovered missing: 2 computers. Apple laptops and the two thinkpad. Latent prints were recovered from the above paper and one belong to defendant.

Incident 4: August 8th, 2015, at 12 West 27th street, 5th Floor. Video shows that at about 12:45pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor and attempts to pry the office door open, and then leaves about 5 minutes later. Upon his exit, security stopped him and detained the male leaves later with a full backpack. Missing Property: 2 Dell laptops and 3 Macbook Laptops. Defendant's identity card/Metrocard recovered. DNA/information beard-black-colored.

Incident 5: August 11, 2015, at 33 East 33rd street, 3rd floor. Video shows that at about 1:30pm, a male dressed in a white chef jacket, black pants, and a black backpack, enter the office through the 3rd floor, uses tool to pry door open and enter the office. The video further shows the male leaving a few minutes later. NO property missing.

Incident 6: August 12, 2015, (location) door, ... damaged office and then covered and property including ... missing ... Apple laptop ... Complainant ... and the male was ... detained. At the time, the male ... the male had 3 Apple American Eagle Silver Dollars were recovered from the defendant ... and arrested.

Incident 7: August 18, 2015, at 24 East 28th street, 4th Floor. Video shows that at about 5:35pm, a Black male dressed in white chef jacket, black pants and a black backpack, enter the office on the 4th floor and enter ... security. Shows the male leaving a few minutes later with a large black backpack. Damage to both ... Missing Property: Macbook Air, 1 Digital ... 1 Apple laptop, 1 Lenovo laptop, 1 ASUS laptop and 1 Digital tablet ...

Incident 8: August 19, 2015, at 30 Broadway. Video shows D enter building and office of Work Group, which ... the surveillance ... 2 laptops missing.

**SUMMARY OF DEFENDANT'S STATEMENTS:**

That particular... of a pocket... that... gives dollar for a bottle made for like a 22 dollars even a and I don't... someone asked me... I was in the front. Later said I don't... like me... My friend... on the... look. Sometimes it was there not allowed... I was there 3 months ago. I am not going to answer. I was a helper. I have 2 backpack. I don't have any with a white chef on it. My friend shouldn't be any of the building. Did they take everything from my room? There shouldn't be a chef jacket in my room.

## SUMMARY OF DEFENDANT'S CRIMINAL HISTORY:

The defendant is a discretionary persistent felony offender. 2 F for burglaries 1 M for a trespass stemming from a burg.

## SPECIAL FACTORS ALLEGING A PLEA OR BAIL:

Damaged and/or stole and/or posted deferred order.

## DIVERSION INFORMATION:

The defendant is diversion [?] not [?] eligible.
The [?] appropriate for diversion. Defendant have drug use problem.

Indictment Charges — [?]
Date filed — 09/30/13
CR number —

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

**NOTICE OF OMNIBUS MOTION**

Indictment No.: 03190-2015

PLEASE TAKE NOTICE that, upon the annexed affirmation of William Kendall, an attorney admitted to practice law in the State of New York and employed by the Neighborhood Defender Service of Harlem, the undersigned will move this Court, at 100 Centre Street, Part 31, on November 2, 2015, for an Order:

1.    Granting a full inspection of the grand jury minutes by the Court and defense counsel. To the extent that this Court is not willing to fully dismiss the indictment based on its own inspection, the defense requests full disclosure of the grand jury minutes to the parties or, in the alternative, relevant portions thereof, including but not limited to the prosecutor's legal instructions. In the alternative, Mr. Walden requests an order retaining a sealed copy of the grand jury minutes as a court exhibit, for inclusion in the record on appeal. U.S. Const. Amends. VI, XIV; N.Y. Const. Art. I, § 6; CPL § 210.30;

2.    Dismissing the indictment, or in the alternative, dismissing or reducing counts therein, pursuant to CPL § 210.20, on the grounds that the evidence before the grand jury was not legally sufficient;

3.    Dismissing the indictment, or in the alternative, dismissing or reducing counts therein, pursuant to CPL § 210.20, on the grounds that the grand jury proceeding was defective within the meaning of CPL § 210.35. U.S. Const. Amends. VI, XIV; N.Y. Const. Art. I, § 6;

4.    Compelling the prosecution to turn over to defense counsel copies of the application for the search warrant, including any annexed affidavits, the search warrant, and the return on the search warrant;

5.    Suppressing, pursuant to CPL §§ 710.20(3), 710.20(4), and 710.60, all statements allegedly obtained from Mr. Walden; in the alternative, Mr. Walden requests a **Huntley** and **Dunaway** hearings for findings of fact and conclusions of law;

1

6.      Precluding the prosecution from introducing at trial all evidence for which it has failed to give timely notice pursuant to CPL § 710.30;

7.      Compelling a Demand to Produce, pursuant to CPL §§ 240.20 and 240.40;

8.      Compelling a Bill of Particulars, pursuant to CPL § 200.95;

9.      Precluding the prosecution's use of certain evidence for failure to comply with the Request for a Bill of Particulars and the Demand to Produce, pursuant to CPL §§ 200.95(5) and 240.70(1);

10.      Ordering the prosecution to fulfill its continuing obligation to provide the defense with exculpatory material pursuant to the Fourteenth Amendment of the United States Constitution and Article I, § 6 of the New York State Constitution, *see Brady v. Maryland*, 373 U.S. 83 (1963);

11.      Granting reasonable time for Mr. Walden to make such additional applications, if required, predicated on the prosecution's response to the motions herein, the Demand to Produce, the Request for a Bill of Particulars, the Court's decision as to the current motions, and any further developments in this case, pursuant to CPL §§ 255.20(2) and 255.20(3);

12.      Granting such additional relief as the Court deems just and proper.

No previous application for the relief sought herein has been made to any court.

Dated:  October 30, 2015
        New York, New York

                                        Respectfully submitted,

                                        William Kendall
                                        Attorney for John Walden
                                        Neighborhood Defender Service of Harlem
                                        317 Lenox Ave
                                        New York, NY 10027
                                        212.876.5500

To:     Shilpa Kalra, Esq.
        Assistant District Attorney
        New York County

        Clerk of the Supreme Court
        Part 31
        New York County

2

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

**OMNIBUS MOTION**

-against-

JOHN WALDEN,

Indictment No.: 03190-2015

Defendant.

WILLIAM KENDALL, an attorney admitted to practice law in the State of New York and employed by the Neighborhood Defender Service of Harlem, hereby affirms under penalty of perjury that the following statements are true, and as to those made upon information and belief he believes them to be true:

1.    I represent Mr. John Walden in this matter.

2.    Mr. Walden was arraigned on September 29, 2015 on nine different counts of Burglary in the Third Degree, in violation of Penal Law 140.20. This affirmation is made in support of a motion requesting several different forms of relief.

### *Facts*

3.    In the early morning hours of August 20, 2015, Mr. Walden was in inside of his home, which was located on 515 West 145th street in Harlem. Despite having done nothing to warrant police suspicion, police officers entered Mr. Walden's home without his permission and while he was asleep. He had not broken any laws, nor acted in any way that would have justified police suspicion. Nonetheless, officers approached him, questioned him, searched him, and then arrested him.

### *Inspection of Grand Jury Minutes*

4.    Mr. Walden respectfully moves this Court for an inspection of the grand jury minutes pursuant to CPL § 210.30. To the extent that this Court is unwilling to grant

3

in full Mr. Walden's pending applications to dismiss all counts of the indictment based upon the Court's own inspection of the minutes, the defense requests that the Court release the minutes, in their entirety, to defense counsel, so that counsel may effectively analyze whether colorable dismissal issues exist and, to the extent that such issues do exist, effectively present written and oral argument in support of dismissal. In the alternative, defense counsel requests inspection of relevant portions, including all applicable legal instructions, absent a particularized showing by the prosecution of a reason to deny inspection. *See* U.S. Const. Amends. VI, XIV; N.Y. Const. Art. I, § 6.

5. To the extent that concerns for the privacy or safety of witnesses are presented, the defense is willing to accede to an inspection of the minutes by counsel alone, subject to any appropriate orders restricting disclosure of the minutes to the defendant personally.

6. In the alternative, and to the extent that this Court does not order full disclosure of the grand jury minutes, Mr. Walden requests an order directing that a sealed copy of the minutes, or any undisclosed portions thereof, be retained as a court exhibit for inclusion in the record on appeal from any prospective judgment of conviction. The defense is entitled as a matter of law to such an order, since it is necessary to fully effectuate a defendant's right to appeal, as guaranteed by State statutory law; the Due Process Clause of N.Y. Const., Art. I, § 6; and the Equal Protection Clauses of the State and Federal Constitutions.

*Dismissal of Counts Not Supported by Legally Sufficient Evidence*

7. Mr. Walden moves, upon the Court's inspection of the grand jury minutes, as previously requested, for an order dismissing the indictment or, in the alternative,

4

dismissing or reducing counts therein, pursuant to CPL § 210.20(1)(b), on the grounds that the evidence before the grand jury was not legally sufficient to establish the offenses charged, or any lesser included offense.

8.       As to the charges of violating Penal Law § 140.20, it is Mr. Walden's contention that the grand jury testimony presented in support of the indictment was insufficient in that it did not adequately demonstrate that:

   a.  That on the dates specified for each count in the indictment, in the county of New York, Mr. Walden unlawfully entered and remained in the buildings specified in each count in the indictment,

   b.  That Mr. Walden did so knowingly and unlawfully;

   c.  And that Mr. Walden did so with the intent to commit a crime inside each building.

### Integrity of the Grand Jury Proceeding

9.       Mr. Walden moves, upon the Court's inspection of the grand jury minutes, as previously requested, for an order dismissing the indictment, or in the alternative, dismissing or reducing counts therein, pursuant to CPL § 210.20(1)(c), on the ground that the grand jury proceeding was defective within the meaning of CPL § 210.35 because:

   a.  The grand jury was illegally constituted (CPL §210.35(1));

   b.  The proceeding was conducted before fewer than sixteen grand jurors (CPL §210.35(1));

   c.  Fewer than twelve grand jurors concurred in the finding of the indictment; (CPL §210.35(3)); and

   d.  The proceeding otherwise failed to conform to the requirements of CPL Article 190, other applicable State law, and the State and federal constitutions to such degree that the integrity thereof was impaired, and prejudice to defendant may have resulted (CPL §210.35(5)); defaults in the conformity of the proceedings include but are not limited to:

      i.  The violation by the prosecutor of the applicable constitutional, statutory, and common-law rules of evidence, including the

applicable rules against hearsay, *see* CPL § 190.30;

    ii. The presentation of deficient or erroneous instructions on the law and the weight of the evidence to the grand jury, including but not limited to incorporation by reference of instructions given to this grand jury regarding the same crime in the course of an earlier presentation. *People v. Brown*, 81 N.Y.2d 798 (1993); CPL § 190.25(6);

    iii. Failure of the prosecution to present exculpatory evidence that the prosecution knew or should have known existed;

    iv. Presentation of improper and extraneous material to the grand jury;

    v. Utilization by the prosecution of the grand jury as a discovery device to prepare for trial.

### Suppression of Statements

10.     At arraignment, the prosecution served notice, pursuant to CPL § 710.30(3), of its intent to introduce a statement allegedly made by Mr. Walden. The statement was allegedly made on August 20, 2015, at 8:02am, at the Midtown South Precinct. The sum and substance of the statement is included in the VDF and relates to the circumstances surrounding his arrest.

11.     Mr. Walden hereby moves to suppress any and all statements that Mr. Walden allegedly made to any public servant, or servants, engaged in law enforcement. In the alternative, Mr. Walden moves for a hearing to determine whether such statements should be suppressed. Upon information and belief, such statements were involuntarily made and obtained from Mr. Walden in violation of his rights under the New York and federal Constitutions.

12.     Mr. Walden moves to suppress under CPL §§ 60.45, 710.30(2), and 710.40 *et seq.* and contends that it was illegally obtained on the following grounds:

    a. It is the tainted fruit of an unlawful arrest and, as such, must be suppressed pursuant to *People v. Dunaway*;

b.  Mr. Walden was subjected to custodial interrogation without first being advised of his *Miranda* rights;

c.  Mr. Walden did not knowingly and intelligently waive his right to remain silent;

d.  Mr. Walden involuntarily made the statement

### Motion to Compel the People to Provide Defense Counsel with Copies of the Search Warrant Application, the Search Warrant, and the Return on the Warrant

13. The People have indicated to defense counsel that the search of Mr. Walden was conducted pursuant to a search warrant. The search warrant has not been turned over to defense counsel. The search warrant application (including any affidavits annexed to the search warrant) and the return on the search warrant also have not been provided to defense counsel.

14. Mr. Walden reserves his right to move to controvert the search warrant, and the above-mentioned documents are required in order for Mr. Walden to make his motion. Mr. Walden cannot make a motion to controvert the search warrant executed in this case absent the requested information. Accordingly, Mr. Walden moves that the Court compel the People to turn over to defense counsel copies of the search warrant, the application for the search warrant, any annexed affidavits, and the return on the warrant. Finally, the defendant requests that this Court grant the defense an opportunity to controvert the search warrant upon receipt of the requested documents.

### Discovery and Inspection

15. A Demand to Produce made pursuant to CPL § 240.20 is also attached and incorporated in the foregoing motion. This Demand is incorporated herein so that it will

be before the Court for a ruling pursuant to CPL § 240.20(1)(a), in the event of the prosecution's refusal to turn over the requested information.

16.     Pursuant to CPL § 240.20(1)(f), Defendant seeks an Order allowing discovery of additional property that the prosecution intends to introduce at trial.

## Bill of Particulars

17.     A request for a Bill of Particulars made pursuant to CPL §200.95 is attached, and incorporated in the foregoing motion. This request is incorporated here so that it will be before the Court for a ruling pursuant to CPL § 200.95(5), in the event of the prosecution's refusal to turn over the requested information.

## Brady Material

18.     In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court recognized the prosecution's continuing duty to disclose to criminal defendants any information that could prove favorable to them. This duty was extended not only to specifically exculpatory information, but to all information, including that which might prove useful in mitigation of sentence.

19.     Mr. Walden hereby requests such potentially favorable evidence or information includes such material that is within the possession, custody, or control of the prosecution and known by the prosecution to exist, or that by the exercise of due diligence on the part of the prosecution should become known to the prosecution. As this duty is a continuing one, the defense requests disclosure of any of the above-referenced material promptly after the prosecution becomes aware of it.

## Reservation of Rights

20. Mr. Walden further demands that the prosecution take immediate steps to obtain and preserve all recorded statements of witnesses who will testify at any hearing ordered, including, but not limited to, tapes and spring records of 911 calls and police transmissions that are kept by the Communications Division of the New York City Police Department, and that the prosecution produce all such statements at any hearing that is ordered, either for review by defense counsel, pursuant to the *Rosario* line of cases, or for an *in camera* inspection by the court, pursuant to *People v. Poole*, 48 N.Y.2d 144 (1979).

21. Mr. Walden respectfully reserves his right, pursuant to CPL §§ 255.20(2) and 225.20(3), to make further motions based upon information now unknown to the defense but revealed by the prosecution's response to his Request for a Bill of Particulars and Demand for Discovery, the Court's decision on the current motions, and any further developments in this case.

\* \* \*

WHEREFORE, Mr. John Walden requests that the Court issue an order granting the relief sought herein.

Dated: October 30, 2015
New York, New York

Respectfully submitted,

William Kendall
Attorney for John Walden
Neighborhood Defender Service of Harlem
317 Lenox Ave
New York, NY 10027
212.876.5500

To:    Shilpa Kalra, Esq.
        Assistant District Attorney
        New York County

        Clerk of the Supreme Court
        Part 31
        New York County

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

**REQUEST FOR A BILL OF PARTICULARS**

Indictment No.: 03190-2015

As counsel to defendant John Walden, I request that you comply with your obligation, pursuant to CPL §§ 200.95 and 100.45, to provide Mr. Walden with specific items of factual information not recited in the accusatory instrument, including the substance of Mr. Walden's conduct and whether you allege that Mr. Walden acted as a principal, an accomplice, or both. This information is essential to a proper defense of the charges in the accusatory instrument, as those charges are both factually vague and conclusory in nature, and because no preliminary hearing was held.

It is my belief that such information is obtainable solely from the District Attorney of New York County. Therefore, a Request for a Bill of Particulars is made requesting the following:

1.  With respect to each and every count of the accusatory instrument, state:

     a.  Whether the prosecution intends to prove that the defendant acted as principal, or as accomplice, or as both.

     b.  If the prosecution intends to prove that the defendant acted as an accomplice, then set forth separately the conduct of the defendant that constitutes the basis of the defendant's accessorial liability, and of each other participant that constitutes the basis of that participant's accessorial liability.

2.  State the exact date and *time* of the alleged incident.

3.  With respect to the arrest of the defendant, state the following:

11

a. The exact time and location at which the defendant was first observed by police officers on the date of the alleged offense;

b. The exact time and location at which the defendant was first detained and/or taken into custody by police officers;

c. The reason that the police detained the defendant and/or took him into custody;

d. The exact time and location at which the defendant was formally placed under arrest; and

e. Whether there was probable cause to arrest the defendant and the basis of any such probable cause, including, but not limited to, whether the arresting officer had first-hand knowledge of the commission of the alleged crime.

Request is further made that any refusal to supply any of the requested material be made in writing, setting forth the grounds for such refusal, and that a copy of such writing be served upon the undersigned and filed with the Court within 15 days of receipt by you of this Request for a Bill of Particulars. *See* CPL § 200.95(4).

Dated: October 30, 2015
New York, New York

Respectfully submitted,

William Kendall
Attorney for John Walden
Neighborhood Defender Service of Harlem
317 Lenox Ave
New York, NY 10027
212.876.5500

To: Shilpa Kalra, Esq.
Assistant District Attorney
New York County

Clerk of the Supreme Court
Part 31
New York County

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

**DEMAND TO PRODUCE**

-against-

JOHN WALDEN,

Indictment No.: 03190-2015

Defendant.

## PART I

As counsel for the Defendant, I am writing pursuant to CPL § 240.20, to request that you produce for inspection, photographing, copying, and/or testing, the following items:

1. Any written, recorded, or oral statements of the defendant, or of any alleged co-defendant, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under such public servant's direction or in cooperation with him or her, regardless of whether the prosecution intends to offer such statement at trial and regardless of whether such statement was made under a promise of full or partial immunity.

2. If there are any statements such as that described in § I.1. above, please provide the following:

   a. The exact time at which the statement was made;

   b. The exact location at which the statement was made;

   c. The conditions under which the statement was made;

   d. The name(s), shield number(s), and command(s) of the person(s) to whom the statement was made; and

   e. A complete and accurate transcription of the statement.

3. Any transcript of testimony relating to the criminal action or proceeding against the defendant, given by the defendant, or a co-defendant to be tried jointly, before any grand jury.

4. Any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the

13

criminal action or proceeding which was made by, or at the request or direction of, a public servant engaged in law enforcement activity, or which was made by a person whom the prosecution intends to call as a witness at trial, or which the prosecution intends to introduce at trial, including any and all reports of medical treatment received by the complaining witness(es).

5. Any photograph or drawing relating to the criminal action or proceeding which was made or completed by a public servant engaged in law enforcement activity, or which was made by a person whom the prosecution intends to call as a witness at trial, or which the prosecution intends to introduce at trial.

6. Any photograph, photocopy, or other reproduction made by or at the direction of a police officer, peace officer, or prosecutor of any property prior to its release pursuant to the provisions of P.L. § 450.10, irrespective of whether the people intend to introduce at trial the property or the photograph, photocopy, or other reproduction.

7. Any other property obtained from the defendant, or a co-defendant to be tried jointly.

8. Any audiotapes, videotapes, or other electronic recordings which the prosecutor intends to introduce at trial, irrespective of whether such recording was made during the course of the criminal transaction.

9. The approximate date, time, place, and circumstances of each charged offense and of defendant's arrest, including, but not limited to, the information requested in the above Request for a Bill of Particulars.

10. Anything required to be disclosed, prior to trial, to the defendant by the prosecution, pursuant to the constitution of this state or of the United States, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), all evidence or information in the prosecution's possession, custody, or control that may tend to exculpate the defendant or impeach any person whom the prosecution intends to call as a witness at any pre-trial hearing or trial (hereinafter "prospective prosecution witness"), including, but not limited to, the following:

    a. All records and information revealing prior convictions, guilty verdicts, or juvenile adjudications, including, but not limited to, relevant "rap sheets," of any prospective prosecution witness;

    b. Whether any prospective prosecution witness has been incarcerated in a federal, state, or local correctional facility, and, if so, the prison records of such witness;

c.    A complete statement of any and all criminal cases currently known by the prosecution to be pending against any prospective prosecution witness, regardless of whether such cases are the subject of promise, regard or inducement, including their NYSID number(s), pursuant to *People v. Torres*, 201 A.D.2d 294, 607 N.Y.S.2d 303 (1st Dep't 1994), and *People v. Santiago*, 138 A.D.2d 327, 526 N.Y.S.2d 456 (1st Dep't 1988);

d.    A complete statement of any and all regulatory, licensing or other governmental or quasi-governmental proceedings now pending, closed, discontinued, settled, or completed against any prospective prosecution witness;

e.    A complete statement of any and all criminal conduct of which the prosecution has knowledge that has been committed by any prospective prosecution witness concerning which there has been no conviction, regardless of whether these crimes are the subject of a promise, reward, or inducement, and regardless of whether these crimes are the subject of a pending criminal charge;

f.    Whether any prospective prosecution witness, or anyone assisting in the investigation leading up to the instant action, received any consideration or promises of consideration for his or her information, cooperation, or testimony, and if so, the substance of the consideration or promise, by whom made, and the time made;

g.    A complete statement of any and all threats, whether express or implied, direct or indirect, or other coercion directed against any prospective prosecution witness, including, but not limited to, criminal prosecutions, forfeiture actions, or investigations; the probationary, parole, deferred prosecution, or custodial status of any such witness; and any civil, tax court, court of claims, administrative, immigration, or other pending or potential legal disputes or transactions involving any such witness and the state or federal government or over which the state or federal government has real, apparent or perceived influence;

h.    A copy of any and all medical and psychiatric reports or information, or records of hospitalization, including any history of alcoholism or substance abuse, known to the prosecution or that can reasonably become known to the prosecution concerning any prospective prosecution witness that arguably pertain to the witness's credibility or ability to perceive, comprehend or recall events;

i.    Any written or oral statements made by any prospective prosecution witness that in any way contradict or are inconsistent

with other written or oral statements he or she has made, and any such statements made by any person, whether a prospective prosecution witness or not, that in any way contradict or are inconsistent with such statements made by a prospective witness;

j.     The same records and information specified in subparagraphs (i) through (ix) with respect to each non-witness declarant whose statements will be offered in evidence at any pretrial hearing or at trial; and

k.     Copies of any and all records of law enforcement or other governmental agencies reflecting intra-departmental disciplinary action taken against any law enforcement or agency official who will testify in this action, including all such records from any governmental agency for which the witness previously worked.

If you should refuse to comply with any portion of this demand, counsel requests that you comply with your obligation, pursuant to CPL § 240.35, by stating that refusal and your grounds therefore in writing, and serve a copy of that writing upon the undersigned and the Court within fifteen days of receipt by you of this Demand to Produce.

## PART II

Further, defense counsel for Mr. Walden requests the following information pursuant to CPL §§ 240.20, 240.40, 240.60, and 240.80. The aforementioned evidence is material to the preparation of Mr. Walden's defense, and these requests are reasonable in all respects:

1.     The name(s), address(es), telephone number(s), and birthdate(s) of any and all witnesses present at the time of the alleged offense, regardless of whether or not they will be called to testify.

2.     The name(s), shield number(s), and command(s) of any and all law-enforcement witnesses the District Attorney intends to call at a hearing or at trial.

3. The name(s), address(es), telephone number(s), and birthdate(s) of all persons who at any time provided the police with any descriptions of the perpetrator of the alleged crime.

4. The name(s), address(es), telephone number(s), and birthdate(s) of all persons who were not present at the time of the alleged offense but who provided any information to the police about some aspect of the offense.

5. The complete text of any written, recorded, or oral statements made by any witnesses interviewed by a public servant engaged in law enforcement activity, or by a person acting under his or her direction, that pertain to the defendant, and/or any illegal acts he is alleged to have committed.

6. Any reports, forms, memoranda, notes, and recordings that have been made about the defendant, at any time, pursuant to Police Department, Housing Police or Transit Police regulations, including, but not limited to, incident reports, complaint reports, complaint follow-up reports, arrest reports or records, memo book entries, probation records, and aided reports.

7. The exact time(s) and date(s) when, and manner in which, and by whom, the police were apprised of the alleged crimes, including, but not limited to, any complaint made to the police, 911 call, walk-in, "Crime Stoppers" call, or tip, and including the name and address of any and all such persons giving such information.

8. State whether Mr. Walden was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). If so, state the time and location where Mr. Walden was advised of his rights and the name(s) of the person(s) who so advised Mr. Walden.

9. A complete copy of any search warrant used to search any apartment, house, or dwelling in this case, and a complete copy of the affidavit from the informant and/or from the police officer, which provided the basis for the search warrant to be issued, and a copy of the return of the warrant filed with the Court. In addition, a complete list of all contraband, fruits of, and instrumentalities of the crime, obtained from Mr. Walden is demanded.

10. The exact dates and times that any such informant, if used, was allegedly in the apartment, house, or dwelling in question, the names of all persons present, and exactly what the informant allegedly observed. (Include all alleged criminal behavior that provided the basis for the search warrant to be issued).

11. Describe with specificity the terms of any cooperation agreement between the District Attorney's office, the police department, the informant, and/or any other prosecution witness in this case.

Dated: October 30, 2015
New York, New York

Respectfully submitted,

William Kendall
Attorney for John Walden
Neighborhood Defender Service of Harlem
317 Lenox Ave
New York, NY 10027
212.876.5500

To:    Shilpa Kalra, Esq.
Assistant District Attorney
New York County

Clerk of the Supreme Court
Part 31
New York County

EXHIBIT

(2)

<u>Incident 9</u>: August 18, 2015 560 Broadway, Video shows D enter building and office of Work Group, which requires special access. 3 laptops missing.

*SUMMARY OF DEFENDANT(S) STATEMENT(S):*

They look like me, but I won't answer that. I had that silver dollar for a hot minute, for like a year. I was never a chef. I did work in the kitchen at a church, serving. It was in the Bronx. I didn't say it looked like me. My friend gave me the silver dollar. Somebody I worked with. She lives in California. I was there 7 months ago. I am not going to answer if I have a chef jacket. I have 3 backpacks. I don't have any with a white stripe on it. My blood shouldn't be at any of the burglaries. Did they take everything from my room? There shouldn't be a chef jacket in my room.

VIDEO: yes

PHOTOS: yes

| **WEAPON** | YES: | NO:  X | RECOVERED: | LOADED W/: | |
| **INJURY** | YES: | NO:  X | TO: | | |
| | PLACE OF TREATMENT: | | | | |
| **NARCOTICS** | TYPE: | WEIGHT: | | LAB: | FT: |
| **SEARCH WARRANT** | YES:  X | NO: | NUMBER: N0901-2015 | | |

| **GRAND JURY** | DATES: 8/25/15; 8/26/15; 9/8/15; 9/10/15 | NO. 3-20 | TERM: 9 |
| | ASSIGNED ADA:  Shilpa Kalra | | |
| | PRESENTING ADA:  Shilpa Kalra | | |

**Final Charges:**
140.2520 (9 COUNTS)                     SP 10-6-15

## REMARKS

DNA and Print hit on 2 incidents.

### WITNESSES

| Police Officers | Shield | Tax | Command | Telephone | GJ |
|---|---|---|---|---|---|
| Detective Steve Stanley | 3554 | 907392 | MTS | | N |
| Det. James Meehan | 6445 | 906807 | MTS | | Y |

| DEFENDANT | AGE | ATTORNEY | Total Arrest | Mis Con | Fel Con | NYSID |
|---|---|---|---|---|---|---|
| John Walden | 49 | A. Prakash | 14 | 1 | 6 | 09987141Z |

| | Date | Time (approx) | Place |
|---|---|---|---|
| **OCCURRENCE** | See Attached | | |
| **ARREST** | 8/20/15 | 9AM | 357 West 35th Street |

| SUMMARY OF CASE | |
|---|---|

### 9 INCIDENT PATTERN COMMERCIAL BURGLARY

Incident 1: July 7, 2015 at 119 West 57th Street, Room 906. Video shows that at about 6:30pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 9th floor, attempts to open several office doors, and enter some of the offices. Shows male leaving about 15 minutes later with a large black backpack. Property missing: 1 Apple laptop

Incident 2: July 14, 2015 460 Park Avenue South, 5th floor. Video shows a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and use a tool to pry the office door open. The video further shows the male leave about 15 minutes later with a full backpack. 7 Apple laptops were missing

Incident 3: I July 28th, 2015 at 402 West 13th Street, 4th Floor. Video shows at about 6pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enters the office on the 4th floor, and enters multiple offices. Shows the male touch 2 pieces of paper in the office and leave about 15 minutes later with a large black backpack. Missing Property: 1 Samsung laptop and 1 Lenovo Thinkpad. **Latent print was recovered from the above paper and matched the defendant.**

Incident 4: August 8th, 2015 at 138 West 25th Street, 5th Floor, video shows that at about 12:25pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and attempts to pry the office door open with a tool and, then uses his body to open the door. Security alarm goes off and shows the male leave about one minute later with a large black backpack. Missing Property: 2 Dell laptops and 3 Macbook laptops. **D cuts himself and leaves blood on elevator door. DNA from blood comes back to deft**

Incident 5: August 14, 2015 at 6 East 39th Street, 7h floor. Video shows that at about 7:36pm a black male, dressed in a white chef jacket, black pants, and a black backpack, enters the office on the 7th floor, pries the office door open, and enters the office. The video further shows the male running out a few minutes later. No property missing.

Incident 6: August 17, 2015 . No video but door was damaged, the safe had been moved, and property, including Cuban cigars, 20 American Eagle Silver Dollar coins, 7 watches, US currency, and 20 Citibank checks in the name of "Pac Program," and multiple US Treasury Bonds, was missing from the office. **One American Eagle Silver Dollar was recovered from the defendant's person after he was arrested**

Incident 7 and Incident 8: August 17th, 2015 at 20 East 46th Street, 4th Floor. Video shows that at about 5:45pm, a black male, dressed in a white t-shirt, dark pants, and a black backpack, enter the office on the 4th floor, and enters 2 separate offices. Shows the male leaving about 15 minutes later with a large black backpack. Damage to both office doors. Property Missing: 1 Acer laptop, 1 Toshiba laptop, 1 Lenovo laptop, 1 ASUS laptop, and 1 digital camera

D O N            W I L L O U G H B Y,

          called as a witness, having been first

          duly sworn, responded to the oath and

          testified as follows:

          THE WITNESS:  Yes.

          THE FOREPERSON:  Be seated.

BY MS. KALRA:

     Q.     Good morning.  Please state your
name for the grand jury.

     A.     It is Don Willoughby.

     Q.     And Mr. Willoughby, are you
currently employed?

     A.     Yes.

     Q.     Where do you work?

     A.     I work at MCD Partners.

     Q.     Where is that?

     A.     It is 138 West 25th Street.

     Q.     And that's part of the office of a
fifth floor, is that correct?

     A.     Yes, fifth floor.

     Q.     That's here in New York County, is
that right?

     A.     Yep.

     Q.     And how long have you been working
there?

A.    Just over two years.

Q.    And what is your title?

A.    Systems Administrator.

Q.    What do you do as a Systems
Administrator?

A.    Basically everything IT, that's
computer, video, copiers.

Q.    Now, directing your attention
August 8, 2015, that was a Saturday, is that
right?

A.    Yes.

Q.    Do you normally work on Saturdays?

A.    No, I don't.

Q.    On that particular day, did you go
into the office at this point?

A.    Yes.

Q.    And can you tell the grand jury
what lead you to go to the office that day?

A.    I was -- I received a call around
12:30 saying that the office was broken into by
the partner/owner.  And when I arrived 20
minutes later, I was arrived or I came in with
about ten NYPD officers and the owner because
of the break-in.

Q.    And the security alarm had gone

off, is that correct?

A.     Correct.

Q.     And as a result of that phone call, when you went there, did you pull surveillance video?

A.     Yes.

Q.     And as an employee of MCD Partners, are you familiar with the surveillance system?

A.     Yes.

Q.     And did you have an opportunity to view surveillance video from August 8, 2015 in the original surveillance system that day?

A.     Yes.

Q.     And did you -- were you able to verify if the date and time was correct?

A.     Yes.

Q.     And it was?

A.     Yes.

Q.     And then did you later then pull that video and burn it to a disc?

A.     Yep.

Q.     I'm going to show you what we're going to mark as Grand Jury Exhibit 1 for identification, 1 and 1-A and 1-B, did you have an opportunity to review these videos before

coming into the grand jury today?

A.   Yes.

Q.   And did these discs contain an exact copy of the surveillance system that you pulled from August 8, 2015?

A.   Yes.

MS. KALRA:   And so, at this time, I'm going to move --

Q.   And how do you know those are the same discs that you reviewed in my office?

A.   How do I know they are?

Q.   Yeah.

A.   My initials are on both of them.

MS. KALRA:   So, at this time, I'm going to move Exhibit 1-A and 1-B into evidence.

Q.   I'm also going to show you two photographs which we will mark as Grand Jury Exhibit 2-A and 2-B.   Are these photographs from the video that is already in evidence as Grand Jury Exhibit 1-A and 1-B?

A.   Yes.

Q.   And do they fairly and accurately show stills from those -- from those videos?

A.   Yes.

MS. KALRA:  At this time, I move
into evidence Grand Jury Exhibit 2-A and
2-B.

Q.    Now, if you could just briefly tell
the grand jury what the Exhibit 1-A and 1-B
show, what the videos show?

A.    It shows the suspect, I guess you
could see is entering our front office door and
coming through the elevator and then about a
minute later him busting into the front door of
the office.  And then the second video I have
shows the alarm going off and shows him
stealing five laptops and going out the front
door of the office down the steps.

Q.    And you said there were five
laptops taken into total?

A.    Correct, five.

Q.    And do you know the approximate
value of those laptops?

A.    It's eighty-eight hundred dollars.

Q.    And did you notice any damage to
the door when you came into the office that
day?

A.    When I arrived, when the police
were on the scene, there was a few like pieces

of broken wood on the floor scattered about.

Q.    And that wasn't there prior to the person coming in, is that correct?

A.    Yeah.  Yeah.

Q.    And now, the person that's pictured in what's in evidence as Grand Jury Exhibit 2-A and 2-B, that's the person that entered and took the laptops, is that correct?

A.    Correct.

Q.    And based on the -- on the video and stills, do you recognize that person to be an employee of MCD Partners?

A.    No.

Q.    Did that person have permission or authority to enter the building or take the -- or enter the floor and the office and take the laptops?

A.    No.

Q.    And do the videos show anybody else that was unauthorized, any other unauthorized people in the building?

A.    No.

MS. KALRA:  All right.  So, I'm going to just play this first video, or attempt to play it.  Let's see how this

goes.  I'm going to step out for just one
minute.

(ADA KALRA STEPS OUT OF GRAND JURY
ROOM AND RETURNS)

Q.    This is the video that you pulled,
is that correct?

A.    Correct.

MS. KALRA:  I'm just going to fast
forward to the end of it

(MACHINE TURNED ON, VIDEO BEING
PLAYED)

MS. KALRA:  All of it is in
evidence.

Q.    That's the individual, is that
correct?

A.    Yes.

Q.    And those are the laptops, is that
right?

A.    Yes.

Q.    And just, if you could, briefly
describe what the male was wearing?

I note the grand jury saw it, but
if you could put it on the record.

A.    Looks like he was wearing a white
shirt with a black backpack that he had on.

Willoughby

Q.    Looked like a white chef coat, is that right?

A.    Yeah.

MS. KALRA:  All right.  I have no further questions for this witness.

Are there any questions from the grand jury?

Seeing none, you're excused.

(MACHINE TURNED OFF)

(WITNESS EXCUSED)

MS. KALRA:  At this time, I'm going to call Mr. Troi Bailey into the grand jury chamber.

T R O I                    B A I L E Y, called as a witness, having been first duly sworn, responded to the oath and testified as follows:

THE WITNESS:  Yes, I do.

BY MS. KALRA:

Q.    Good morning.  Please state your name for the grand jury.

A.    Troi Bailey.

Q.    And Mr. Bailey, are you currently employed?

A.    Yes.

Q.    What do you do for a living?

A.    I'm an IT director.

Q.    And where do you work?

A.    Deep Focus.

Q.    Where is that located?

A.    460 Park Avenue South, New York, New York.

Q.    That's in Manhattan, correct?

A.    Manhattan, yes.

Q.    And how long have you worked there?

Bailey

A.     Just under two years.

Q.     Now, directing your attention to
July 14, 2015, were you working that day?

A.     Yes.

Q.     And what day was that?

A.     Tuesday.

Q.     And did you -- what time did you
arrive at the office?

A.     Approximately 9:30.

Q.     And when you arrived at the office,
did you notice or were you told that anything
was missing?

A.     I received an e-mail from a
colleague that they had missing property.

Q.     Now, did you then check yourself to
see how much property was missing?

A.     Yes, I did.

Q.     And what property was missing and
how much?

A.     The user's laptop was missing and
five other users' laptops were missing.

Q.     So, there were six laptops?

A.     Yes.

Q.     And they belong to your company,
not the individual users?

Bailey

A.      That's right, to Deep Focus.

Q.      What is the approximate value of all six laptops?

A.      Eleven thousand dollars.

Q.      Now, as a result of finding that day that the laptops were taken, or were missing, did you check for surveillance video?

A.      Yes, I did.

Q.      And as an employee of Deep Focus, are you familiar with the surveillance video system?

A.      Yes.

Q.      And were you able to view surveillance video from July 14, 2015, from about 7:15 in the morning?

A.      Yes, I was.

Q.      And that was at 460 Park Avenue South, is that correct?

A.      Yes.

Q.      And did you -- were you able to verify if the date and time on those video on your surveillance system was correct?

A.      Yes, I was.

Q.      And then did you burn a copy of that on to a disc?

A.      Yes, I did.

Q.      And now, I'm showing you what we're
going to mark as Grand Jury Exhibit 3 for
identification.  Is this a copy of the video
that you burned from the surveillance system?

A.      Yes, it is.

Q.      And it's an exact copy, is that
correct?

A.      That's correct.

Q.      And did you have a chance to review
it before coming into the grand jury today?

A.      Yes, I did.

Q.      And how do you know that that's --
it's the same disc?

A.      Has any initials.

MS. KALRA:  All right.  At this
time, I move into evidence Grand Jury
Exhibit 3.

Q.      I'm also going to show you two
photographs which we will mark as Grand Jury
Exhibit 4-A and 4-B; do you recognize these
photos?

A.      Yes, I do.

Q.      And what are they photos of?

A.      This is the fifth floor of our

office, and the individual entering the floor
illegally.

Q.    And these photographs fairly and
accurately show stills from the video that's in
evidence as Grand Jury Exhibit 3, is that
correct?

A.    Yes, that's correct.

MS. KALRA:    I now move into
evidence Grand Jury Exhibit 4-A and 4-B.

Q.    Now, you had mentioned that in 4-A
and 4-B show the person that is pictured, is
that correct?

A.    That's correct.

Q.    Can you describe what that person
is wearing?

A.    A white chef's jacket, black pants,
black shoes and a backpack.

Q.    And can you just describe for the
grand jury what Grand Jury Exhibit 3, the
video, what that shows?

A.    It's footage of internal footage of
the gentleman in the photographs, again,
entering our floor illegally.

Q.    When you say illegally, can you
explain in more detail what the person is doing

JMS

Bailey

in the video?

A.  He has some sort of tool jimmying the lock to the front door off the floor.

Q.  So, to be clear, the video actually shows the person using that tool to enter the office building, is that correct?

A.  Yes.

Q.  The office?

A.  The floor, yes.

Q.  And you mentioned the person was wearing a white chef coat and black pants. Does he have any bags on him?

A.  Yes, he has a black backpack.

Q.  And based on your review of the stills and video, do you recognize this person to be an employee of Deep Focus?

A.  He is not.

Q.  And as an employee of Deep Focus, can you tell the grand jury, did this person have permission or authority to enter the fifth floor or take any of the laptops?

A.  He did not, no.

Q.  And does the video show any other unauthorized people entering the fifth floor at that time?

A.     No, it does not.

Q.     And just to be clear, that video is from July 14th, from about 7:15 p.m., is that correct?

A.     That's correct.

Q.     And did you notice any damage to the lock when you entered?

A.     He actually destroyed the cylinder on the left portion of the door that would secure the door from being entered.

Q.     So, you could see that damage when you came in that day?

A.     Yes.

MS. KALRA:  All right.  I have no further questions for this witness.

Are there any questions from the grand jury?

Seeing none, you're excused.

THE WITNESS:  Thank you.

(WITNESS EXCUSED)

MS. KALRA:  At this time, I'm going to call Mr. Juan Torres into the grand jury chamber.

J U A N                    T O R R E S, called as a witness, having been first duly sworn, responded to the oath and testified as follows:

THE WITNESS:  Yes.

THE FOREPERSON:  Please be seated.

BY MS. KALRA:

Q.    Good morning.  Please state your name for the grand jury.

A.    Juan Torres.

Q.    And are you currently employed?

A.    Yes.

Q.    Where do you work?

A.    At Royal Promotion Group, 119 West 57th Street

Q.    What floor is that on?

A.    That's the ninth floor

Q.    Is that here in Manhattan?

A.    Yes.

Q.    And how long have you worked there?

A.    Three years now.

Q.    What's your title there?

JMS

A.    Systems Engineer.

Q.    And that's here in Manhattan, is that correct?

A.    That is correct.

Q.    Now, directing your attention to August 8, 2015, do you remember what day -- were you working that day?

A.    No, I wasn't working August 8th.

Q.    And that was a Saturday, is that right?

A.    August 8th, I'm not sure.

Q.    Well, did you receive a phone call regarding a security alarm?

A.    Yes.

Q.    And you remember what day you received that call?

A.    That was July, I believe.

Q.    I'm sorry July 7th?

A.    Yes.

Q.    Was that July 7th?

A.    July 7th.

Q.    And when you received that phone call, what did you do?

A.    I was told of some property that was actually missing, so I went ahead and I did

some investigation with the camera system.

Q.    And as a result of that you pulled video, is that correct?

A.    That's correct, I pulled video.

Q.    And are you familiar with the surveillance system at RPG?

A.    Yes, I was.

Q.    Were you able to verify when you looked through surveillance video from July 7, 2015, the date and time, if it was correct?

A.    Yes.

Q.    And it was correct, is that right?

A.    That's true.

Q.    And when you watched the video, did you then watch it into its original system?

A.    Yes, I did.

Q.    Did you later burn it to a disc?

A.    Yes, I did.

Q.    Now, I'm going to show you what we're going to mark as Grand Jury Exhibit 5 for identification.  Did you have an opportunity to review Grand Jury Exhibit 5, the disc that's in front of you, before coming into the grand jury today?

A.    Yes, I did.

Q.    And is it -- how do you know that's
the same video that you reviewed?

A.    My signature is right here in the
corner.

Q.    That's an exact copy of the video
that you pulled from July 7, 2015?

A.    Yes.

Q.    Is that correct?

A.    That's correct.

MS. KALRA:  Now, at this time, I
move into evidence Grand Jury Exhibit 5.

Q.    I'm also going to show you two
photos we will mark as Grand Jury Exhibit 6-A
and 6-B; do you recognize the photos that are
in front of you?

A.    Yes, I do.

Q.    And what are they photos of?

A.    These are the gentleman, the video
of the gentleman who actually came into our
premise that day.

Q.    That's the stills from the video,
is that correct?

A.    That is correct.

Q.    And they fairly and accurately show
what's depicted on the video, which is already

in evidence as Grand Jury Exhibit 6, is that correct, or 5, is that correct?

A.      That is correct.

MS. KALRA:  At this time, I move Grand Jury Exhibit 6-A and 6-B into evidence.

Q.      Now, can you briefly tell the grand jury what the video shows?

A.      The video shows this gentleman coming into the -- out of the elevator coming into our property, and then later on leaving our property going and getting back on the elevator.

Q.      And what time is the video -- does the video depict?

A.      6:50.

Q.      Okay.

A.      6:50.

Q.      In the evening?

A.      In the evening, yes.

Q.      And as an employee of RPG, were you able to verify whether property was taken?

A.      Yes, I was able to verify.

Q.      Was there any property that was taken?

A.      There was property taken.

Q.      What property?

A.      It was a laptop.

Q.      Do you know the approximate value
of the laptop?

A.      Thirty-two hundred, I believe. And
then there is some software that was put on
there, I started working there, so.

Q.      Now, the area where the video shows
the gentleman entering, is that an employees
only area?

A.      That is correct.  You need access,
you need a key file to enter that area.

Q.      And so it's generally locked and
not open to the public, is that right?

A.      That's correct, it's never open to
the public.  It's usually locked, yes.

Q.      And now from looking at the video
and stills, did that person -- is that person
an employee of RPG?

A.      No.

Q.      Did that person have permission and
authority to enter RPG offices and take any
property?

A.      No, not not all.

Q.    Does the video show any other
unauthorized person or is he the only
unauthorized person?

A.    He is the only unauthorized person
that was on the premises that day.

MS. KALRA:  All right, okay.  I
have no further questions.

Q.    Did you notice any damage to the
doors or anything like that?

A.    No, there were -- no damage was
done.

MS. KALRA:  All right.  I have no
further questions for this witness.

Are there any questions from the
grand jury?

Q.    I'm actually going to ask you one
more question.  Can you describe the clothing
that the person was wearing in the video?

A.    Sure, black pants, look like some
sort of a chef jacket, black shoes and a black
knapsack.

Q.    Like a backpack?

A.    Yes, backpack.

MS. KALRA:  I have no further
questions.  At this time, you're

Torres

excused.

THE WITNESS:  Thank you.

(WITNESS EXCUSED)

MS. KALRA:  At this time, I'm
calling Tim Edge into the grand jury
chamber.

T I M                         E D G E,
called as a witness, having been first
duly sworn, responded to the oath and
testified as follows:

THE WITNESS:  I do.

THE FOREPERSON:  Please be seated.

BY MS. KALRA:

Q.    Good afternoon.  Please state your
name for the grand jury.

A.    Tim Edge.

Q.    And Mr. Edge, are you currently
employed?

A.    Yes.

Q.    And how long have you been -- where
are you employed?

A.    Insignia National Title Agency.

Q.    Where is that located?

A.    6 East 39th Street, Suite 700 and
701.

Q.    And that's here in Manhattan, is
that correct?

A.    It is.

JMS

Edge

Q.    How long have you been employed
there?

A.    I have been affiliated with the
company since the beginning, about six years.

Q.    What's your current title?

A.    Technology Manager.

Q.    Now, directing your attention to
August 14, 2015, did you receive any phone
calls from security that day?

A.    From ADT, our security center, yes.

Q.    As a result of that phone call, did
you then go to the office?

A.    To -- not that night, no.

Q.    When was the next time that you
went to the office?

A.    Monday.

Q.    And at that time, did you check for
surveillance video?

A.    I did.

Q.    And as an employee of Insignia, are
you familiar with the surveillance video
system?

A.    I am.

Q.    And were you able to verify when
you viewed the surveillance video system from

August, you viewed it from August 14, 2015, is
that correct?

A.      That's correct.

Q.      Were you able to verify, did it
have the correct date and time?

A.      It did.

Q.      And you viewed the video from the
original system, is that correct?

A.      Correct.

Q.      Did you later then burn what you
observed from the surveillance system on to a
disc?

A.      Will, I downloaded a copy of it, I
did not burn it to a disc.

Q.      You electronically downloaded it?

A.      Yes.

Q.      I'm showing you what we are going
to mark as Grand Jury Exhibit 7 for
identification.  Did you have an opportunity to
review this disc before coming into the grand
jury today?

A.      Yes, I did.

Q.      And how do you know it's the same
disc?

A.      Because I initialed it.

Q.    And that is an exact copy of the
surveillance video that you downloaded from
August 14, 2015, is that correct?

A.    It was.  It was.

Q.    And that's from 6 East 39th Street
on the 7th floor, is that correct?

A.    Correct.

Q.    What is the time of the
surveillance video?  The surveillance video
that's -- about what time do you see the person
come in?

A.    7:36 p.m.

MS. KALRA:  All right.  At this
time, I move into evidence Grand Jury
Exhibit 7.

Q.    And I'm going to show you a photo
which I'm going to mark as Grand Jury Exhibit 8
for identification; do you recognize the photo
that's in front of you?

A.    Yes, I did.  I did screen shots of
the video on Monday and these are them.

Q.    And those are fair and accurate
depictions of the screen shots from the video
which is Grand Jury Exhibit 7 in evidence, is
that correct?

A.    Yes, it is.

MS. KALRA:  All right.  At this
time, I move into evidence Grand Jury
Exhibit 8.

Q.    Now, Mr. Edge, if you could just
describe for the grand jury what the video
shows?

A.    Well, the entire video clip starts
when I extracted where our cleaning person
locks up for the night and sets the alarm,
which was I think 7:27.  And then at 7:36, this
guy gets off the elevator, looks down the hall.
When you get off the elevator, you're looking
at Suite 700 entrance, which is two glass
doors, so I have a camera pointed that day.
And then Suite 700 is down, 701 is this way.
And I have a camera pointed to that front door.
So, you see him get off the elevator from Suite
700's camera, look down 701, come back, look
into 700 because the glass is clear, sees that
the lights were off, goes back down the hall to
701.  The glass is frosted on that window.  You
see the frosted glass, drops the bag, pulls
something out of it.  Jimmies the door, puts it
back in his door, puts it back on, comes

through the door. You have about 30 seconds before my alarm goes off. He goes down the hall and in Suite 701 looks into the conference room, giggles one of the doors that was locked, and there is no audio on the video, however, you can tell when the alarm went off. He panicked, he turns and he runs. He grabs his bag, goes out of the door, hits the elevator button on both elevators, just one on either side, goes in one elevator, comes out, looks out the fire escape, and goes in the other elevator and disappears.

Q. And so, just to be clear, the man in the video actually does enter the office, is that correct?

A. Absolutely, he does.

Q. And that area is enclosed and enclosed, is not open to the public, correct?

A. Correct.

Q. It's a locked area?

A. It was locked.

Q. Was there -- did you notice if there was any property missing from the office when you were there?

A. There was not.

Q.	There was no property missing?

A.	No property missing.

Q.	Can you describe what, if any,
damage you observed personally when you
returned to the office?

A.	When I returned to the office I
didn't observe any damage.  It was after I
watched the video and saw how he got in and I
went and looked at the door.  You can see a
small mark where he jammed something, you know,
on the latch.

Q.	And can you tell the grand jury
based on your review of the video and the
stills, what the person is wearing who was
trying to get into the office?

A.	I would say it was a white dress
shirt, maybe a white shirt, and black trousers.

Q.	And did the person have a bag or
anything that they were carrying?

A.	It appeared to have two backpacks,
one large and in the video it looks like it's
probably heavy.  And then one small that I
think is the one that he pulled his tools out
of to break the door.

Q.	And based on the video, could you

tell if the person was an employee of Insignia?

A.    Absolutely not.

Q.    He was not?

A.    He was not.

Q.    And did -- he did not have
permission or authority to enter the office, is
that correct?

A.    He did not.

Q.    Does the video show any other
unauthorized persons entering the office at
that time?

A.    It does not.

Q.    And just to be clear, what is the
time again that's policed at the time the
person is entering?

A.    7:36 p.m.

        MS. KALRA:  All right.  Okay,
great.  I have no further questions for
this witness.

        Are there any questions from the
grand jury?

        Seeing none, you're excused.

        (WITNESS EXCUSED)

MS. KALRA: Ladies and gentlemen, I'm going to be calling Detective Meehan into the grand jury chamber.

J A M E S          M E E H A N, called as a witness, having been first duly sworn, responded to the oath and testified as follows:

THE WITNESS: Yes.

THE FOREPERSON: Please be seated.

BY MS. KALRA:

Q. Good afternoon. Please state your name, shield and command for the grand jury.

A. Detective James Meehan, shield number 6445, Midtown South Detective Squad.

Q. And detective, how long have you been part of the New York City Police Department?

A. Almost 22 years.

Q. And how long have you been a detective?

A. Sixteen years.

Q. Now, as part of your role as a detective in the Midtown South Detective Squad, did you investigate a series of burglaries in the Midtown Manhattan area?

Meehan

A.    Yes.

Q.    And as a result of that investigation, did you make an arrest?

A.    Yes.

Q.    And who did you arrest?

A.    John Walden.

Q.    Now, just to be clear, I -- have you ever had any prior contact with the defendant, John Walden?

A.    Yes.

Q.    And how many hours of contact would you say that included?

A.    Three.

Q.    Three hours?

A.    Yeah.

Q.    And then during the course of this arrest, how many hours of contact did you have with the defendant?

A.    About three also.

MS. KALRA:  Now, you heard testimony from the detective that he had prior contact.  You're not to speculate as to what that contact is, but just to consider that in terms of determining his credibility regarding -- in regard to

JMS

identification that he will be supplying
to us.

Q.     All right.  Now, I'm going to show
you what's in evidence already from Grand Jury
Exhibit 1 through 8, a series of photos and
stills.  During the course of your
investigation, did you have an opportunity to
review all of these stills and look at these
videos?

A.     Yes.

Q.     And do you recognize the person in
the video and in the stills?

A.     Yes.

Q.     And who is that person?

A.     John Walden.

Q.     And are you sure about that?

A.     Yes.

Q.     Now, can you just describe for the
grand jury what the -- what the defendant is
wearing in each of those videos?

A.     He has on a white chef's jacket,
it's a black backpack with the white stripe on
it, and some of the video he has black sneakers
with tan front.

Q.     Now, as part of the your

investigation, did you execute a search warrant
at 515 West 145th Street, Room 3210?

A.     Yes.

Q.     And was that search warrant duly
signed by a judge?

A.     Yes.

Q.     And is that the same room where the
defendant was staying and apprehended?

A.     No.

Q.     All right.  Now, I'm going to mark
for identification a series of photos, 1 -- 9-A
through G.  I'll just deemed them marked for
now.  Do you recognize those photos?

A.     Yes, I took them.

Q.     And what are they photos of?

A.     The first one is five watches, the
second and third is the front and the back of a
US silver dollar coin, the fourth is the black
backpack with the white stripe, the fifth is
the white chef's jacket, the sixth is two
chisels, and the other is a photo of his
sneakers he was wearing, John Walden.

Q.     So, minus the last photo of the --
of the sneakers that Mr. Walden was wearing,
the other photos are all property that you

Meehan

recovered during the search warrant, is that
correct?

A.    Yes.

Q.    And the last photo of the sneakers,
that's a photo that you took of the defendant
wearing the sneakers, is that correct?

A.    Yes.

Q.    And those photos fairly and
accurately show the items that you recovered
and the shoe that the defendant was wearing, is
that correct?

A.    Yes.

MS. KALRA:  I now enter into
evidence Grand Jury Exhibits 9-A through
G.

Q.    So, I just want to start with the
photos of the shoes.  Can you describe for the
grand jury what those shoes looked like?

A.    Black sneakers, but they have a tan
Rubber Band around the front.

Q.    And could you characterize these
shoes as distinctive?

A.    Yes.

Q.    And do you see the same shoes in
the video from MCD Partners?

JMS

A.    Yes.

Q.    You reviewed that video, right?

A.    Yes.

Q.    Now, looking at the photo of the chisels, where was that recovered from?

A.    Two chisels were in the closet, Room 3210.

Q.    And where -- do you recognize those chisels?

A.    They're very heavy duty, yes.

Q.    And do those look like -- can you tell, based on looking at them, if those are consistent with the tools that were used in some of the videos?

A.    Yes.

Q.    And now looking at the white chef -- the photo of the white chef jacket and the backpack, where were those recovered from?

A.    The chef's jacket was in the closet also and the black backpack was on the floor in the room.

Q.    And I think I elicited this, but just could you be clear, this is the room where the defendant was apprehended and was staying, is that correct?

Meehan

A.      Yes.

Q.      And does that white chef jacket and backpack look familiar to you?

A.      Yes.

Q.      And can you explain to the grand jury how it does?

A.      The same one in all the videos.

Q.      And is there anything distinctive about the backpack?

A.      It has like a white strap on it that makes it look like a stripe.

Q.      And is that stripe visible in some of the videos that you observed?

A.      Yes.

Q.      Now, as part of your investigation, did you investigate a burglary that took place in the office of a PAC, P-A-C, Program.

A.      Yes.

Q.      And as a result of that investigation, did you learn that there was any -- if there was any property that was taken?

A.      Yes.

Q.      And what was the property that you were told that was taken?

A.      Twenty silver dollars, coins, seven

watches, money, US Bonds, cigars.

      MS. KALRA:  Now, members of the
grand jury, I just elicited a statement
from the detective that somebody else
told him.  You will later hear testimony
on a different day that will help link
that up.  For now, we are -- you are not
to consider that for the truth of the
matter, but just to understand why the
detective recovered those items when he
executed the warrant.  But again, there
will be other testimony on a different
day.

    Q.    So, looking at the photos of the
watch and the coins, those were items that you
recovered during the search warrant, is that
correct?

    A.    The watches recovered during the
search warrant, the coin was on his possession
at the time of his arrest.

    Q.    Where did you recover them from?

    A.    The watches were from a night stand
in the room.

      MS. KALRA:  Okay.  All right.  I
have no further questions for this

witness.

Are there any questions from the grand jury?

Seeing none, you're excused.

(WITNESS EXCUSED)

K E V I N                                    R O S S,

      called as a witness, having been first

      duly sworn, responded to the oath and

      testified as follows:

      THE WITNESS:  I do.

BY MS. KALRA:

    Q.    Good morning.  Please state your

name for the Grand Jury.

    A.    Kevin Ross.

    Q.    And are you currently employed?

    A.    Yes.

    Q.    Where do you work?

    A.    The Pac Program.

    Q.    Where is that located?

    A    6 East 39th Street.

    Q.    That's here in Manhattan?

    A.    Yes.

    Q.    What floor is your office on?

    A.    Four.

    Q.    What is your title?

    A.    I am the president.

    Q.    Can you tell the Grand Jury a

little bit about your educational background?

    A.    I have a PHD in clinical phycology.

    Q.    Directing your attention to August

14, 2014, that was a Friday; is that correct?

    A.    Yes.

    Q.    And were you working that day?

    A.    Yes, I was.

    Q.    And when you left what time did you leave the office?

    A.    Probably about 2, 3.

    Q.    When you left the office did the office seem to be normal and no problems at that time?

    A.    Yes.

    Q.    And did you later return to the office the following Monday on August 17, 2015?

    A.    Yes.

    Q.    And what, if anything, did you observe when you returned?

    A.    I observed the safe that we had under the reception desk in another room on its back. I went to another room. I looked on the door, it appeared to be marked up. I noticed inside my room two drawers dumped back. I had a small cabinet next to me dumped out and dumped over.

    Q.    What doors were marked up?

    A.    The front door. Basically, any

door that was locked had a mark on.

Q.     When you say marking, was it
damaged?

A.     Yes, jimmied with possibly a
screwdriver.

Q.     Did you notice if any property of
the drawer was missing?

A.     Yes.

Q.     What was that?

A.     Twenty silver bullion coins, six
watches.  I had petty cash next to me which had
$650 in it, 2012 tax return.

Q.     Any US currency missing?

A.     The 650 was missing, as well as I
believe $2,200 in bonds.

Q.     You mentioned there was twenty
silver US dollar coins missing, can you
describe what they looked like, if there was
any special packages?

A.     Yes, they were kept in a black
velvet case.  Each coin was kept in a hard
plastic so you couldn't touch it in your hands.

Q.     Was there any surveillance in your
office?

A.     No.

Q.    Why is that?

A.    Because I assumed the building would have cameras and proper security.

Q.    There was no video available for that span of time from August 14th and August 17, 2015; is that correct?

A.    Correct.

Q.    I am going to show you what's already in evidence as Grand Jury Exhibit 9-E, a photograph, as I said already in evidence, of five watches.  Do you recognize any of those watches?

A.    Yes, the three watches on the left.

Q.    And can you describe what those watches are?

A.    The first one is a Locman watch. The second one is a black Swatch.  The third one is a blue and orange Swatch.

Q.    Are those the watches that were missing from your office between the period of August 14th and August 17th?

A.    Yes.

Q.    And do you know the approximate value of those watches?

A.    The Locman is 700.  The Swatch is

Ross

60, and the other Swatch is 60.

Q.     Now, I am showing you what's also
in evidence as Grand Jury Exhibit 9-F and 9-G.
Do you recognize those photos?

A.     Yes.

Q.     What is pictured in them?

A.     The silver coin wrapped in silver
plastic.

Q.     Does that look similar to one of
the coins that was missing from your office
between the time periods of August 14th and
August 17th?

A.     Yes.

Q.     And that coin that is pictured,
that's the front and the back of the coin; is
that correct?

A.     Correct.

Q.     Is that coin that is pictured
encased in the plastic as yours were?

A.     Yes.

Q.     All right.  And did anybody have
permission or authority to enter the building,
or to enter your office rather, between the
period of August 14th and August 17, 2015 and
take these items?

Ross

A.     No.

          MS. KALRA:  I have no further
questions for this witness.  Are there
any questions from the members of the
Grand Jury?  Seeing none.  You are
excused.

          THE WITNESS:  Thank you.

          (WITNESS EXCUSED)

KC

M A R Y                         S H E L D O N,

      called as a witness, having been first

      duly sworn, responded to the oath and

      testified as follows:

      THE WITNESS:  I do.

BY MS. KALRA:

    Q.    Good morning.  Please state your

name for the grand jury?

    A.    Mary Sheldon.

    Q.    And, Ms. Sheldon, are you currently

employed?

    A.    Yes,

    Q.    Where do you work?

    A.    Stripes Group.

    Q.    Where is that located?

    A.    Meat Packing District, 402 West

13th Street

    Q.    Here in Manhattan, correct?

    A.    Yes.

    Q.    Now, directing your attention to,

well actually, let me ask you this first,

what's your title there?

    A.    Office manager.

    Q.    As an office manager, what is your

role?

A.    I oversee the day-to-day activities in the office, I also maintain executive everyday calendars, travel.  Kind of cover the entire office.

Q.    Now, directing your attention to July 29, 2015, were you working that day?

A.    Yes.

Q.    And what -- when you were working, did you -- what time did you get there in the morning to the office?

A.    Nine a.m.

Q.    And when you got to the office did you notice if anything was missing?

A.    We didn't notice anything missing until later in the morning.

Q.    What was missing?

A.    Two laptops and an iPad.

Q.    As a result of seeing that the property was missing, did you view surveillance video?

A.    We did.

Q.    And what -- that was in -- where were the cameras?

A.    The camera we had access to was on the executive level on the fifth floor of the

Sheldon

building.

Q.    Just to clarify, what floor were the laptops taken from?

A.    Fourth floor.

Q.    Okay.  Now, I'm going to show you what we're going to mark as grand jury -- Grand Jury Exhibit Nine for identification.  Do you recognize the disk in front of you?

A.    Yes.

Q.    Did you have an opportunity to review that disk before coming to the grand jury today?

A.    Yes.

Q.    And how do you know it's the same disk?

A.    Because I initialed it.

Q.    And your initials appear on that disk, correct?

A.    Yes.

Q.    Now, does that video show exactly the surveillance video that you observed in your office system?

A.    Yes.

Q.    And were you able to verify that the date and time was correct when the video --

SL

when you watched the video initially?

A.     Yes.

Q.     Can you tell the grand jury what
are the date and time on that video,
approximately?

A.     July 28th, approximately --
actually, I'm blanking on the time.

Q.     Was it around six p.m.?

A.     Yes, it was around six p.m., yes.

MS. KALRA:  All right, so I'm
moving into evidence Grand Jury Exhibit
Nine.

Q.     So, Ms. Sheldon, can you briefly
describe to the grand jury, what does the
surveillance video show?

A.     It shows a gentlemen getting off
the elevator on the fifth floor.  He's wearing
a white button down, dark jeans, a backpack.
He goes off screen into my bosses office and
when he comes back into the screen he's holding
a pad of paper.  He writes something on a sheet
of paper and puts that sheet of paper in his
pocket, leaves the pad of paper on my desk and
he then goes out of the screen shot.

Q.     So the -- the piece of paper that

he put on the desk, that remained there when you returned to the office, is that correct?

A.    Yes.

Q.    And can you describe for the grand jury, you had mentioned that the laptops were taken from the fourth floor.  Can you see on the video how the person entered into the building?

A.    Yes.  An employee from my office let him in and you see him enter the building, go in the elevator.  He tries to access any floor on the elevator that he can push.  He pushes all of the buttons and the only floor that actually works is the fifth floor.  The elevator was broken and it should not have -- he should not have been able to access the fifth floor, but it worked, and that's how he was able to get up.

Q.    So in -- in order to get on to any of the floors, how does a person have to get access?

A.    You need an access card.  All employees have access cards to enter the building to access each floor via the staircase and each floor via the elevator.

Sheldon

Q.    And from the fifth floor -- can you see from the video how the gentlemen got from the fifth to the fourth floor?

A.    He used the staircase.

Q.    But you can't see how he entered the fourth floor?

A.    You can't see how he entered the fourth floor, but you can see that he used the staircase.

Q.    Again, to get into the fourth floor from the staircase, you still need an access key?

A.    Correct.

Q.    And that area is closed off to the public, is that correct?

A.    Correct.

Q.    Was -- was there any damage to the doors on -- on the fourth or fifth floor?

A.    No.

Q.    In looking at the video, were you able to tell if the gentlemen was an employee or worker of Stripes Group?

A.    You could tell, and he was not, he should not have been there.

Q.    And he did not have permission or

Sheldon

authority to take anything, is that correct?

A.    Correct.

MS. KALRA:  I have no further questions for this witness.  Are there any questions from the grand jury?  Seeing none, you are excused.

(WITNESS EXCUSED)

W I L F R E D O                    V E G A,

       called as a witness, having been

       first duly affirmed, responded to

       the affirmation and testified as

       follows:

       THE WITNESS:  I affirm to tell the

truth.

BY MS. KALRA:

    Q.    Good morning, detective.  Please

state your name for the Grand Jury.

    A.    Wilfredo Vega.

    Q.    Your shield and command.

    A.    7560 currently assigned to the 5th

Precinct.

    Q.    How long have you been with the New

York City Police Department?

    A.    Twenty-four years.

    Q.    Now, directing your attention to --

well as part of your role as detective in the

5th Precinct Squad, did you investigate a

commercial burglary that took place on August

18, 2015 at 560 Broadway?

    A.    It was grand larceny of commercial

premises at that location, yes.

    Q.    And as part of that investigation,

did you pull surveillance video from 560
Broadway?

    A.    Yes, I did.

    Q.    All right.  I'm going to hand to
you what has been premarked as Grand Jury
Exhibit 11 for identification.  Is this the
surveillance that you pulled from August 18,
2015?

    A.    Yes, a copy of it.

    Q.    Did you have an opportunity to
review that before coming into my office today?

    A.    Yes.

    Q.    Did you have an opportunity to see
that video in the original surveillance system
at 560 Broadway.

    A.    Yes, I did.

    Q.    Were you able to verify if the date
and time on the surveillance system was
approximately correct?

    A.    That is correct, yes.

    Q.    And that is the same video you
viewed in my office, correct?

    A.    Yes.

    Q.    How do you know that?

    A.    I initialed the copy.

Q.     You are -- these are your initials
on the disc before you, correct?

A.     Yes, it is.

MS. KALRA:  At this time, I'm
moving into evidence Grand Jury Exhibit
Number 11.

Q.     Now, detective, if you could
briefly describe for the Grand Jury what that
video shows.

A.     The video footage shows -- it's a
camera.  It's of the lobby of the location.  It
shows the defendant exiting the building.

Q.     When you say defendant you mean a
male, correct?

A.     Yes.

Q.     Can you describe what that person
looks like?

A.     He is a male black wearing a white
shirt.  I don't know roughly five six, five
seven.

Q.     When you say white shirt, can you
describe is it a chef jacket, a button-down?

A.     A chef jacket.

Q.     Do you recall what color his pants
were?

A.     To the best of my recollection, I think, it was blue jeans.

Q.     It shows him exit 560 Broadway, is that correct?

A.     Yes, exiting the location.

Q.     It does it show him pulling up to any of the floors?

A.     No.

Q.     There are no -- are there separate cameras on each floor?

A.     No.

Q.     That is the only video that was available from that location, is that correct?

A.     That's correct.

Q.     And just to clarify 560 Broadway that is here in Manhattan, right?

A.     Yes.

Q.     What is the time on the video?

A.     The time stamp I believe is 19:48 hours.

Q.     So that's about?

A.     7:48, excuse me.

MS. KALRA:  Thank you.  I have no further questions for this witness.  Are there any questions from the Grand Jury?

RL

1    Seeing none you are excused.

2              THE WITNESS:   Thank you.

3         (WITNESS EXCUSED)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     MS. KALRA:  Now calling Stephanie

2  Glaser into the Grand Jury chamber.

3  S T E P H A N I E              G L A S E R,

4      called as a witness, having been first

5      duly sworn, responded to the oath and

6      testified as follows:

7     THE WITNESS:  Yes.

8  BY MS. KALRA:

9     Q.    You can have a seat.  Please state

10 your name for the Grand Jury.

11    A.    Stephanie Glasser.

12    Q.    Ms. Glasser, are you currently

13 employed?

14    A.    Yes.

15    Q.    Where do you work?

16    A.    I work at Work Group.

17    Q.    Where is it located?

18    A.    At 560 Broadway.

19    Q.    That's here in Manhattan, is that

20 correct?

21    A.    Yes.

22    Q.    Now, directing your attention to

23 August 19, 2015, were you working that day?

24    A.    Yes.

25    Q.    And what time did you get into the